FREDERICK PENNEY vs. THE FIRST NATIONAL BANK OF BOSTON.[1]

Suffolk. December 10, 1981. — April 6, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Due Process of Law*, Secured party's taking possession of collateral. *Consumer Protection*, Bank. *Uniform Commercial Code*, Unconscionability, Secured transaction. *Practice, Civil*, Counsel fees.

General Laws c. 106, § 9-503, which permits the use of self-help by a
    secured party to take possession of collateral upon a debtor's default
    and without notice to him does not entail State action or otherwise de-
    prive the debtor of due process of law. [718-719]
A bank's action in seizing without notice the collateral securing a loan
    agreement between it and a debtor in default under the agreement was
    not unconscionable or oppressive within the meaning of regulations
    issued by the Attorney General pursuant to G. L. c. 93A, where the
    agreement fairly put the debtor on notice of the bank's right to take
    immediate possession on default and the right to take possession was
    reasonably related to the bank's commercial needs; nor was the bank
    required to exhaust its rights against a guarantor before proceeding
    against the collateral. [719-723]
Where two secured notes provided that the debtor would pay all costs of
    collection and attorney's fees incurred by the secured party in enforc-
    ing the notes on default, the attorney's fees expended by the secured
    party in defending the debtor's claim that it had wrongfully seized
    possession of the collateral were within the fee provisions of the notes.
    [723]

CIVIL ACTION commenced in the Superior Court on April
26, 1978.

The case was heard by *Meyer*, J., on a motion for sum-
mary judgment. A proceeding for the assessment of counsel
fees was heard by *Dimond*, J.

---

[1] A codefendant was granted summary judgment along with The First
National Bank of Boston, but the plaintiff does not pursue his appeal
against the codefendant.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Gary S. Sackrider* for the plaintiff.

*Edward B. Ginn* for the defendant.

O'CONNOR, J.  Frederick Penney, a commercial fisherman who borrowed money from the defendant bank, appeals from a summary judgment for the bank on his complaint and from an award of attorney's fees in favor of the bank on its counterclaim.  We affirm.

On March 28, 1975, Penney borrowed $32,802.39 from the bank, and executed a promissory note and a security agreement involving a lobster boat.  The back of the note provided that upon default all obligations would become immediately due and payable without notice or demand and the holder would then have the rights and remedies of a secured party under the Uniform Commercial Code of Massachusetts (UCC).  G. L. c. 106.  The security agreement provided as follows:  "Borrower may have possession and use of the Collateral until default.  Upon the happening of any of the following events or conditions, namely: (a) default in the payment or performance of any of the obligations . . . contained or referred to herein or in any note evidencing any of the obligations . . . , thereupon, and as long as such default continues Bank may declare all of the obligations to be immediately due and payable, and Bank shall then have . . . in addition to all other rights and remedies, the rights and remedies of a secured party under the Uniform Commercial Code of Massachusetts, including without limitation thereto the right to take immediate possession of the Collateral . . . .  Bank will give Borrower at least five days' prior written notice of the time and place of any public sale of the Collateral or of the time after which any private sale thereof is to be made."  Penney's obligation was guaranteed by William Regan, who agreed to pay in the event Penney defaulted.

On March 4, 1976, Penney executed another note, payable to the bank on demand, in the amount of $4,244.40.

This note also expressly gave the bank the rights and remedies of a secured party under the UCC.

Penney defaulted on both notes. On July 29, October 11, November 4, and December 30, 1977, the bank wrote to Penney demanding full payment of all sums due. Penney made some further payments after each letter except the last, but he remained in default on both notes throughout that period. The bank brought an action on Regan's guaranty and on August 25, 1977, attached Regan's real estate in the amount of $18,500. The bank never exercised its remedies against Regan. The bank seized the lobster boat without prior notice on January 19, 1978, at which time Penney's total indebtedness to the bank was approximately $19,000. The bank notified Penney five days later of the repossession, of its intention to sell the boat, and of his right to redeem. Penney did not exercise his right to redeem, and the boat was sold at public auction for $13,500. Penney asserts by affidavit that as a result of the repossession he lost $34,000 worth of fishing equipment which was at sea.

Penney commenced this action to recover for the losses he alleges resulted from a wrongful seizure and sale of the boat. He claims that the seizure and sale violated G. L. c. 93A, § 2, and his due process rights secured by the Fourteenth Amendment to the Constitution of the United States. The bank answered and counterclaimed for the balance due on the two notes together with interest, costs, and attorney's fees. The bank's motion for summary judgment on the counterclaim was allowed by agreement, subject to later assessment of interest, costs, and attorney's fees, on the condition that no execution would issue until Penney's action was decided. The bank then moved for summary judgment on Penney's action and the motion was allowed, based on pleadings, affidavits, a deposition, admissions, and answers to interrogatories. Thereafter, interest, costs, and attorney's fees were assessed in connection with the counterclaim. Penney appeals from the summary judgment on his complaint and from the assessment of attorney's fees on the counterclaim. Penney claims that the award of attorney's

fees in connection with the bank's defense against his complaint was erroneous.

1. *Constitutionality of G. L. c. 106, § 9-503.* We interpret the security agreement as neither adding to nor detracting from the bank's right to repossess without notice under G. L. c. 106, § 9-503 (UCC § 9-503). Penney attacks that section as violating the due process guaranties of the Fourteenth Amendment.[2] Section 9-503, as appearing in St. 1979, c. 512, § 7, provides in pertinent part that "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." The Fourteenth Amendment by its terms applies only to the States. In order for the Fourteenth Amendment to be invoked against a private actor, the government must not only act but must be "significantly involved" in the actor's underlying conduct. *Moose Lodge No. 107* v. *Irvis,* 407 U.S. 163, 173 (1972), quoting from *Reitman* v. *Mulkey,* 387 U.S. 369, 380 (1967). Penney argues that the Legislature's enactment of § 9-503 was sufficient State action to render unconstitutional a private party's self-help repossession in reliance thereon.

Neither this court nor the United States Supreme Court has reached this precise question. The constitutionality of UCC § 9-503 has been considered in many other jurisdictions, however, and has been almost uniformly held to involve no State action. See, e.g., *Gibbs* v. *Titelman,* 502 F.2d 1107 (3d Cir.), cert. denied, 419 U.S. 1039 (1974); *Brantley* v. *Union Bank & Trust Co.,* 498 F.2d 365 (5th Cir.), cert. denied, 419 U.S. 1034 (1974); *Gary* v. *Darnell,* 505 F.2d 741 (6th Cir. 1974); *Turner* v. *Impala Motors,*

---

[2] Penney also argues for the first time on appeal that the bank is an instrumentality of the Federal government because it is a national banking association, and therefore its seizure without prior notice violates the due process guaranties of the Fifth Amendment to the United States Constitution. Since it was not pleaded or tried below, this issue is not before the court. *Paro* v. *Longwood Hosp.,* 373 Mass. 645, 652 n.9 (1977).

*Inc.,* 503 F.2d 607 (6th Cir. 1974); *Nowlin* v. *Professional Auto Sales,* 496 F.2d 16 (8th Cir.), cert. denied, 419 U.S. 1006 (1974); *Bichel Optical Laboratories* v. *Marquette Nat'l Bank,* 487 F.2d 906 (8th Cir. 1973); *Adams* v. *Southern Cal. First Nat'l Bank,* 492 F.2d 324 (9th Cir. 1973), cert. denied, 419 U.S. 1006 (1974); *John Deere Co.* v. *Catalano,* 186 Colo. 101 (1974); *King* v. *South Jersey Nat'l Bank,* 66 N.J. 161 (1974); *Colonial Swimming Pool Co.* v. *Camperama of Vt., Inc.,* 134 Vt. 463 (1976).

*Flagg Bros.* v. *Brooks,* 436 U.S. 149 (1978), is persuasive authority for the proposition that there is no State action in mere legislative authorization of creditors' self-help remedies that do not involve the participation of any governmental employees. In *Flagg Bros.,* the Court rejected a due process attack on a warehouseman's sale, pursuant to UCC § 7-210, of another's goods to satisfy overdue storage charges because the sale involved no State action. Section 9-503, like § 7-210, authorizes but does not compel private action and does not delegate a function traditionally reserved to the State. *Id.* at 161-162, 164-166. See Annotation to G. L. c. 106, § 9-503, Mass. Ann. Laws, Uniform Commercial Code at 428 (1976) (creditor's right to repossess on default predates enactment of § 9-503).

We hold that self-help repossession by a private party pursuant to G. L. c. 106, § 9-503, does not involve State action and does not violate the Fourteenth Amendment. Our holding is consonant with our decision in *Debral Realty, Inc.* v. *DiChiara,* 383 Mass. 559 (1981), where we held that the lis pendens procedure under G. L. c. 184, § 15, does not violate due process.

2. *Consumer Protection Act violations.* Penney contends that summary judgment was improper even if § 9-503 is constitutional. He argues that the bank's repossession without prior notice in the circumstances presented here constituted an "unfair or deceptive" act entitling him to damages under G. L. c. 93A, §§ 2 & 11. Chapter 93A applies to the conduct of banks. *Raymer* v. *Bay State Nat'l Bank,* 384 Mass. 310, 319 (1981). The precise question presented is

whether there is any substantial question of fact material to whether the bank's conduct was unfair or deceptive. Mass. R. Civ. P. 56 (c), 365 Mass. 730, 824 (1974).

Penney asserts that there are four facts, each of which is either established or subject to substantial dispute, that show a violation of c. 93A when taken together. These are (1) that the bank repossessed without notice (2) when it had previously attached real property with a value in excess of the attachment under the guaranty (3) leaving a balance owed of $600 over the attachment amount (4) when it knew or should have known Penney had equipment at sea that he would be unable to retrieve.

Chapter 93A, § 2, provides that unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful (§ 2 [a]), and that in construing § 2 (a) the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal courts to § 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 [a] [1]), as from time to time amended. Section 2 (c) authorizes the Attorney General to promulgate rules and regulations defining "unfair or deceptive." No case or Federal Trade Commission interpretation, or rule or regulation of the Attorney General, has been brought to our attention making repossession without prior notice in the circumstances of this case an unfair or deceptive act or practice.

Regulation XV of the regulations promulgated by the Attorney General pursuant to c. 93A, provides in pertinent part that an act or practice is a violation c. 93A, § 2, if it is oppressive or otherwise unconscionable in any respect. 940 Code Mass. Regs. § 3.16 (1) (1978). We therefore consider whether the bank's repossession without notice was in any way unconscionable or oppressive.

In *Zapatha* v. *Dairy Mart, Inc.,* 381 Mass. 284, 291-295 (1980), we considered the meaning of "unconscionable" in G. L. c. 106, § 2-302, which authorizes a court to refuse to enforce any clause of a contract that the court finds "to have been unconscionable at the time it was made." Penney argues that under Regulation XV the security agreement

was unconscionable at the time it was made and that its enforcement by repossession without notice was also unconscionable. Our consideration in *Zapatha* of unconscionability with respect to contract terms, within the meaning of G. L. c. 106, § 2-302, is helpful not only to our determination whether the provisions in the notes and security agreement here were unconscionable but also to our determination whether the repossession was unconscionable within the meaning of Regulation XV. In *Zapatha*, we said, "Because there is no clear, all-purpose definition of 'unconscionable,' nor could there be, unconscionability must be determined on a case by case basis (see *Commonwealth* v. *Gustafsson*, 370 Mass. 181, 187 [1976]), giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." *Zapatha, supra* at 292-293. "The fact that particular conduct is permitted by statute or by common law principles should be considered, but it is not conclusive on the question of unfairness," *Schubach* v. *Household Fin. Corp.*, 375 Mass. 133, 137 (1978), nor is it conclusive as to fairness that conduct is expressly permitted by a contract between the parties, *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104-105 (1977).

General Laws c. 106, § 9-503, permits self-help repossession independent of similar contractual permission. Accordingly, neither the act of repossession nor a contract permitting it is per se unconscionable. Furthermore, the security agreement specifically provides that Penney "may have possession and use of the Collateral *until default*" and that upon default the bank shall have "the rights and remedies of a secured party under the Uniform Commercial Code of Massachusetts, *including without limitation thereto the right to take immediate possession of the Collateral*" (emphasis added). Regardless of whether Penney was familiar with the provisions of c. 106, § 9-503, he was fairly put on notice of the bank's unconditional right to take immediate possession upon default. In addition, the contract

provision for notice before sale, together with the lack of provision for notice before repossession, fairly implied that notice was not a prerequisite to repossession. There was no potential for unfair surprise in the note and security agreement provisions allowing immediate repossession upon default. If Penney was surprised by the repossession, he was not surprised unfairly.

There was no oppression in including in the notes and security agreement a provision confirming the remedies available under G. L. c. 106, § 9-503. We view the question of oppression as directed to the substantive fairness to the parties of permitting the repossession provisions as written. See *Zapatha, supra* at 294-295. The right of repossession without notice was reasonably related to the bank's need for assurance that the collateral would be available to it in the event of default. The risk to the bank of having a right of repossession only after notice to Penney was not disproportionate to Penney's risk of loss upon repossession without notice. In light of the bank's commercial needs, it was not unfair to impose upon Penney the practical requirement that after default he limit the amount of his equipment at sea or that he makes arrangements for retrieving it other than by means of the collateral.

Penney argues that it was unfair for the bank to repossess the boat when it knew or should have known that Penney might have fishing equipment at sea worth thousands of dollars, and when it had an attachment in the amount of $18,500 on land with an equity of $35,000 owned by Regan, the guarantor. What we have said in the preceding paragraph disposes of the contention that it was unfair to repossess without notice, apart from the attachment, and we know of no authority or sound reason for requiring that a creditor exhaust his rights against a guarantor before proceeding against the debtor's property. We hold that the facts established here require that neither the contractual provisions permitting self-help repossession, nor the implementation thereof, are "oppressive or otherwise unconscionable" within the meaning of the Attorney General's Regula-

tion XV. The bank's motion for summary judgment on Penney's complaint was properly allowed.

3. *Attorney's fees.* Penney challenges the award of any attorney's fees incurred by the bank to defend the wrongful repossession and c. 93A claims, as well as the claims (presented below but not argued here) that the bank inadequately cared for the boat and failed to sell it in a commercially reasonable manner. He also appears to argue for the first time on appeal that the award was excessive because it reflected an unreasonable amount of attorney's time to defend against Penney's complaint, prosecute the bank's counterclaim, and enforce the guaranty. The latter contention is not properly before us. *Paro* v. *Longwood Hosp.,* 373 Mass. 645, 652 n.9 (1977).

Each note provided that Penney would pay all costs of collection and attorney's fees paid or incurred by the bank in enforcing the note on default. The order of the judge allowing the bank's motion for summary judgment on its counterclaim with the assent of both parties provided that no execution was to issue until resolution of Penney's claims or further order of the court. Defense of Penney's claims was therefore essential to collection on the notes, and the attorney's fees incurred for that defense were incurred by the bank in enforcing the notes. In addition, those fees were required to withstand attack upon the repossession and sale of the boat, which were an integral part of the collection process. They were expenses of the collection process and so were within the fee provisions of the notes.

*Judgments affirmed.*