Michelle HARRINGTON, Plaintiff,

v.

CACV OF COLORADO, LLC, and
J.A. Cambece Law Office, PC,
Defendants.

Civ. Action No. 06cv11216–NG.

United States District Court,
D. Massachusetts.

Aug. 30, 2007.

Jason D. Fregeau, Longmeadow, MA, for Plaintiff.

Kathryn E. Pieczarka, Lawson & Weitzen, LLP, Boston, MA, for Defendants.

### MEMORANDUM & ORDER

GERTNER, District Judge.

## I. INTRODUCTION

In the above-titled action, Plaintiff Michelle Harrington ("Harrington") has filed suit against Defendants CACV of Colorado LLC ("CACV") and J.A. Cambece Law Office PC ("Cambece"). The claims stem from an underlying suit by Defendants for the repayment of a debt (approximately $14,000) owed by Plaintiff.

The complaint raises four claims. Count 1 alleges that Defendants violated the Fair Debt Collection Practice Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and Mass. Gen. Laws ch. 93A by (1) filing a suit in the improper venue; (2) filing for and obtaining a default based upon the alleged misrepresentation that Harrington had failed to respond to discovery; (3) filing and maintaining suit even though Defendant CACV is a foreign entity unregistered with the Massachusetts Secretary of State; and (4) filing and maintaining suit without giving the file a proper review.

Count 2 alleges that these acts and omissions are, in addition, violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A ("Chapter 93A").[1]

Count 3 alleges that Defendants' acts and omissions inflicted severe emotional distress upon Harrington.

Count 4 alleges that Defendants breached their duty to supervise their agents, directly and proximately causing harm to Plaintiff.

Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (document entry # 7).

Plaintiff neither denies nor concedes that she owed the debt Defendants sought in the underlying suit or that Defendants had the right to file a collection suit against her at all. Rather, her claims are based on Defendants' conduct of the suit.

For the reasons below, I **GRANT IN PART AND DENY IN PART** the motion to dismiss.

## II. PROCEDURAL HISTORY

Plaintiff filed her complaint against CACV and Cambece on July 14, 2006. (Document # 1–1). Defendants filed their motion to dismiss on September 19, 2006. (Documents ## 7, 8). Plaintiff filed her opposition on October 3, 2006. (Document # 9–1), and Defendants replied on March 19, 2007. (Document # 11).

## III. FACTS

The following facts are stated in the complaint and are uncontested by Defendants.

- (3) filed and maintained suit even though CACV is a foreign entity unregistered with the Massachusetts Secretary of State, violating FDCPA §§ 1692d, 1692e(2), 1692e(4), 1692e(5), 1692e(10), & 1692(f), Chapter 93A, § 2; and,
- (4) Defendant Cambece filed and maintained suit without giving the file a proper review, violating FDCPA §§ 1692d, 1692e(2), 1692e(4), 1692e(5), 1692e(10), & 1692(f) and Chapter 93A, § 2.

---

**1.** Specifically, Harrington alleges that Defendants:

- (1) filed suit in the improper venue, violating FDCPA § 1692i and Chapter 93A, § 2;
- (2) filed for and obtained a default judgement based upon alleged misrepresentation that Harrington failed to respond to discovery, violating FDCPA §§ 1692d, 1692e(2), 1692e(4), 1692e(5), 1692e(10), & 1692(f) and Chapter 93A, § 2;

Plaintiff Harrington lived in Falmouth, Massachusetts, for the entire time relevant to this case. Defendants CACV and Cambece are in the business of debt collection and regularly collect or attempt to collect, directly or indirectly, consumer debts due and owing or allegedly due and owing to themselves and/or others. Defendant CACV is incorporated in Colorado, with its principal place of business in Denver, Colorado. Defendant Cambece is incorporated in Massachusetts with its principal place of business located in Peabody, Massachusetts.

Plaintiff owed a debt to Fleet Bank for personal, household, and family uses. Defendant CACV purchased the debt from Fleet Bank and hired Defendant Cambece to collect it. Beginning in or about June 1994, Defendants communicated with Harrington via telephone calls and letters, attempting to collect the debt.

On November 15, 2004, Defendants filed a collection suit against Harrington in Barnstable District Court, even though Harrington's residence was in the Falmouth Judicial District, and Defendants had been communicating with her at her home address. Harrington lived twenty-one miles from the Barnstable District Court and one block from the Falmouth District Court.

Defendants sent discovery requests to Harrington on August 9, 2005, to which Harrington responded by certified mail, return receipt requested, on September 24. Despite her response, Defendants moved for default against her, claiming that she had failed to respond. The Barnstable District Court defaulted Harrington on November 28, 2005. When Harrington informed the court that she had in fact responded, Defendants moved to vacate the judgement, and the court complied. Harrington then moved for a change of venue to Falmouth District Court; Defendants did not oppose the motion.

Harrington then moved to dismiss the collection suit, as it appears that CACV had failed to be registered with the Massachusetts Secretary of State as a foreign corporation as required under Mass. Gen. Laws ch. 156D, § 15.01 et seq. Defendants opposed dismissal, and, after a hearing on March 20, 2006, the trial court dismissed Defendants' lawsuit with prejudice.

Harrington filed this action on July 14, 2006.

## IV. LEGAL STANDARDS

### A. Standard for A Dismissal Pursuant to Fed.R.Civ.P. 12(b)(6)

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts "must accept as true the well-pleaded factual allegations of the Complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998) (internal citation omitted). The Court may "differentiate between well-pleaded facts, on the one hand, and bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like, on the other hand;" the latter "can safely be ignored." *Id.* (internal quotation omitted). A complaint should be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (internal citation omitted).

### B. Relevant Statutes of Limitation

The FDCPA "contains a jurisdictional, one-year statute of limitations." *Alger v.*

*Ganick, O'Brien & Sarin,* 35 F.Supp.2d 148, 150 (D.Mass.1999) (citing 15 U.S.C. § 1692k(d)). Specifically, the statute states that "an action to enforce any liability created by this title may be brought ... within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

A claim under Chapter 93A "brought by any person, including the attorney general shall be commenced only within four years next after the cause of action accrues." Mass. Gen. Laws ch 260, § 5A.

In Massachusetts, the statute of limitations for claims of emotional distress and negligent supervision is three years "after the cause of action accrues." Mass. Gen. Laws ch. 260, § 2A.

As Plaintiff brought this action on July 14, 2006, the FDCPA statute of limitations bars claims for violations occurring before July 14, 2005. Claims under 93A are barred for violations occurring prior to July 14, 2002. State tort claims for emotional distress and negligent supervision are barred for conduct occurring before July 14, 2003.

## V. *COUNT I: VIOLATIONS OF THE FDCPA*

Count I of Plaintiff's complaint alleges that Defendants violated the FDCPA through four acts or omissions: (1) filing the underlying lawsuit in the improper venue; (2) filing for and obtaining a default for Plaintiff's supposed failure to answer discovery; (3) filing and maintaining suit while CACV was not registered with the Massachusetts Secretary of State, and; (4) filing and maintaining suit without giving the file a proper review. Defendants argue that Count I of Plaintiff's complaint should be dismissed because claims arising from the first, third and fourth allegations are barred by the statute of limitations and that all four allegations are not actionable under the FDCPA as a matter of law.

## A. *Relevant Law*

Congress passed the FDCPA to combat the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors ... [that] contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692. The FDCPA prohibits various practices by debt collectors including, but not limited to, harassment and abuse, unfair practices, false or misleading representation, and attempting communication with debtors at improper or inconvenient times. 15 U.S.C. §§ 1692a–1692j.

The FDCPA imposes strict liability on debt collectors for their violations. *See Pettway v. Harmon Law Offices, P.C.,* 2005 WL 2365331 *3, 2005 U.S. Dist. LEXIS 21341 *10–11 (D.Mass.2005) (Stearns, J.); *see also Picht v. Jon R. Hawks, Ltd.,* 236 F.3d 446, 451 (8th Cir.2001); *Foti v. NCO Fin. Sys.,* 424 F.Supp.2d 643, 661 (S.D.N.Y.2006). A plaintiff need not show intentional conduct by the collector or actual damages. *See Pettway,* 2005 WL 2365331 at *3, 2005 U.S.Dis. LEXIS 21341 at *11. Plaintiff need only show a violation of one of the FDCPA's provisions in order to make out a prima facie case. Defendants may, as an affirmative defense, claim that their violations were unintentional, but they must meet the burden of showing "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see also Russell v. Equifax A.R.S.,* 74 F.3d 30, 36 (2d Cir.1996) (A "plaintiff need not show intentional conduct under the Act to be entitled to damages. The unintentional acts of defendant are a defense to be raised against a claimed violation"). As implied by the

final clause of § 1692k(c), even unintentional violations are actionable if Defendants did not maintain "procedures reasonably adapted to avoid any such error." *See Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1514 (9th Cir.1994); *Maxwell v. Fairbanks Capital Corp. (In re Maxwell)*, 281 B.R. 101, 120 (Bankr.D.Mass.2002).

Courts have split on whether mistakes of law may be considered "bona fide error" for the purposes of the affirmative defense. *See Shapiro v. Haenn*, 222 F.Supp.2d 29, 43 (D.Me.2002) (citing *Johnson v. Riddle*, 2002 WL 1381233, 2002 U.S.App. LEXIS 12780, \*32 n. 13 (10th Cir.2002) (collecting cases), *vacated by* 305 F.3d 1107 (10th Cir.2002)). The majority have held that the "bona fide error" defense was intended to apply only to clerical errors, not mistakes of law. *Shapiro*, 222 F.Supp.2d at 43. The First Circuit has not spoken to the issue, nor has any court in this District.

### B. *Allegation 1: Defendants' Failure to File Collection Suit in Proper Venue*

■ This claim is based on Defendants' conduct in initially filing the suit on November 15, 2004. Claims accruing on that date would have to have been filed by November 15, 2005 under the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). As this claim was filed on July 14, 2006, I must dismiss it as time-barred. However, its substance is relevant to Plaintiff's Chapter 93A claims, as a violation of the FDCPA is also a per se violation of Chapter 93A. *See infra* § VI.B.1. Thus, I will proceed to discuss the merits here.

In substance, Defendants clearly violated 15 U.S.C. § 1692i, which provides:

> any debt collector who brings any legal action on a debt against any consumer shall ... bring such action only in the judicial district or similar legal entity (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action.

Harrington lived in the third judicial district of Barnstable (Falmouth District Court) for the entire period relevant to this case. Defendants brought their lawsuit in the *first* judicial district of Barnstable (Barnstable District Court).[2] Harrington asserts that she did not sign any contract for this debt outside of the town of Falmouth, and Defendants do not argue that venue was proper in Barnstable District Court based on the first prong. Instead, they argue that both the Falmouth and Barnstable District Courts were proper venues under Massachusetts law, which requires only that an action be brought in "the judicial district where one of the parties lives ... or in a court, the judicial district of which is adjacent to the judicial district where one of the parties lives." Mass. Gen. Laws ch. 223, § 2. Thus, Defendants argue, Plaintiff's home is within the jurisdiction of both the Falmouth and Barnstable District Courts.

But the FDCPA does not say that debt collection suits may be brought in whatever venue would be proper under state law. Its clear language requires that suits be brought in "the *judicial district* or similar legal entity ... in which [the] consumer resides." 15 U.S.C. § 1692i (emphasis supplied). Numerous courts have rejected the argument that "judicial district or simi-

---

**2.** The first judicial district of Barnstable (also called the Barnstable District Court) consists of the towns of Barnstable, Sandwich and Yarmouth. The third judicial district of Barnstable (also called the Falmouth District Court) consists of the towns of Mashpee, Falmouth and Bourne. *See* Mass. Gen. Laws ch. 218, § 1.

lar legal entity" merely incorporates state venue provisions. *See Dutton v. Wolhar,* 809 F.Supp. 1130, 1139 (D.Del.1992) ("Although in Delaware civil actions may generally be brought in a county other than the one in which the defendant resides, the term 'judicial district or similar legal entity' in § 1692i appears to provide that when such action is one to collect a debt, institution of suit is limited to the county in which the alleged debtor resides or signed the contract forming the basis of the debt." (internal citations omitted)); *see also Newsom v. Friedman,* 76 F.3d 813, 817–20 (7th Cir.1996); *Fox v. Citicorp Credit Servs.,* 15 F.3d 1507, 1515 (9th Cir.1994); *Martinez v. Albuquerque Collection Servs.,* 867 F.Supp. 1495, 1501–02 (D.N.M.1994) (§ 1692i "preempts state law venue provisions").

Indeed, the Massachusetts venue provision itself, at the same time that it provides that for state purposes venue may lie in adjacent "judicial districts," makes clear that these remain separate "judicial districts" nonetheless. Mass. Gen. Laws ch. 233, § 2.

Congress' purpose in passing the FDCPA was "to prevent debt collectors from bringing collection suits in forums located at great distances from debtors' residences." *Dutton,* 809 F.Supp. at 1139 (citing S.Rep. No. 95–382 at 5, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699). Further, the legislative history of § 1692i suggests that Congress intended to adopt the Federal Trade Commission's "fair venue standards," under which collection suits must be brought in the district in which the debtor resides or where the underlying contract was signed, regardless of where else venue may be proper under state law. *Id.* That intention would be defeated by the rule Defendants assume: that "judicial district" is coterminous with jurisdiction, even where courts are given jurisdiction

over parties beyond their districts. Indeed, under Massachusetts law proper venue in the collection suit would also have lain in Peabody District Court, where Cambece is located, approximately ninety-five miles from Harrington's home. Certainly this would not comport with the requirements of § 1692i. The result would be still more absurd in states with unitary courts, such as Arizona, where Defendants' argument would render § 1692i completely toothless by allowing venue anywhere in the state. *See Fox,* 15 F.3d at 1515.

The simple fact is that Defendants brought their suit not in the judicial district in which Plaintiff lived one block from the courthouse, but in a different judicial district twenty miles away. This was in violation of the plain language of the FDCPA.

## C. *Allegation 2: Filing for and Obtaining Improper Default Judgment*

Defendants moved for default judgment in the underlying lawsuit between September 24, 2005 and November 28, 2005 (none of the papers filed by either party indicates exactly when the motion was filed), less than one year before this action was commenced. Thus, this is the only allegation that is not barred by the FDCPA's statute of limitations.

Plaintiff argues that Defendants violated six sections of the FDCPA when they filed for default against her:

1. *1692d* (harassment or abuse)

2. *1692e(2)* (falsely representing character, amount or status of debt or service rendered or compensation received by debt collector)

3. *1692e(4)* (falsely representing that nonpayment of debt will result in arrest, imprisonment, etc.)

4. *1692e(5)* (threatening to take action that cannot legally be taken)

5. 1692e(10) (the use of false representation to collect any debt or obtain information about a consumer)

6. *1692f* (unfair or unconscionable practices, including collecting amounts beyond amount authorized in agreement, cashing postdated checks, false charges, taking possession of property unlawfully).

Defendants argue that none of these sections in any way applies to filing for default for failure to comply with discovery, whether such failure is factual or not. Plaintiff makes no specific argument under any of these provisions. Given Plaintiff's complaint, it would be possible to argue that Defendants' action in filing the motion for default judgment was: (1) unconscionable, in violation of 1692f; or (2) constituted a threat to take legal action that cannot legally be taken, in violation of 1692e(5).

Defendants argue that "lawful procedural mechanisms" that are part of litigation and supervised by the state court, such as filing for default judgment, are not actionable under the FDCPA.

The Supreme Court has held that the FDCPA does apply to attorneys who "regularly" engage in debt collection activities, "even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). In *Heintz,* the Court held that a letter sent by a debt collector's attorney to settle a debt collection suit, misrepresenting the amount of the debt, could be a violation of the FDCPA even though it was related to litigation. *Id.* at 293, 115 S.Ct. 1489. Defendants argue that *Heintz* is distinguishable from this case because it involved the regulation of a letter sent outside of court proceedings without the knowledge of the court, whereas the motion for default in this case was made directly to the Court.

This Court considered the applicability of the FDCPA to litigation activities in *Argentieri v. Fisher Landscapes, Inc.,* 15 F.Supp.2d 55 (D.Mass.1998), *mot. to vacate den.,* 27 F.Supp.2d 84 (D.Mass.1998). In *Argentieri,* the defendant made and later withdrew a groundless prayer for attorneys' fees in his complaint to a state court to recover a debt owed to his client. *See* 15 F.Supp.2d at 58. Argentieri then sued Fisher in federal court, claiming that the prayer for attorneys' fees violated various sections of the FDCPA. *Id.* I held that the prayer for attorneys' fees was not unconscionable, noting:

> [T]he whole purpose of regulating debt collection [by the FDCPA] was to 'supervise' a range of unsupervised contacts ... a statement in a pleading is supervised by the court and monitored by counsel.... The courts have their own system of protections against abusive tactics that occur during litigation.... Given these protections, **when a claim is made to the court,** there is no need to invoke the protections of a statute designed to protect consumers from unscrupulous, unsupervised debt collection tactics.

*Id.,* at 61–62 (emphasis supplied). I distinguished an attempt to collect a debt within the course of litigation from the

> obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process

that was described by the Senate in passing the FDCPA. *Id.* at 61 (quoting S. Rep. 95–382).

But on Argentieri's motion to vacate, I clarified that this holding was narrowly applicable to the relatively innocuous and minor conduct in that case, and was not meant to exempt all conduct in state court proceedings: "I do not suggest here that claims filed in court could not, if intended to harass a debtor, be actionable under the FDCPA." *Argentieri*, 27 F.Supp.2d at 86. Further, the FDCPA itself clearly contemplates federal liability for at least some collector conduct that occurs in state court. *See e.g.* 15 U.S.C. § 1692i (regulating the venue where a collection suit may be brought).

■ Defendants' improper motion for default falls somewhere between the baseless prayer for attorneys' fees in *Argentieri* and the harassing practices described by the Senate. Unlike the prayer for attorneys' fees, it was not merely a preliminary statement of demand subject to "a determination of applicability at a later stage of the litigation." *Argentieri*, 15 F.Supp.2d at 61. Rather, it was a dispositive motion that brought Harrington to the brink of losing the collection suit and facing increased damages. It resulted in actual—and improper—default, an all-too-common disposition in collection suits.

Harrington alleges that "Defendants' violations are frequent, persistent and intentional." Complaint at ¶ 46. This is sufficient to make out a prima facie case of violation of the FDCPA. *See supra* § V.A. Defendants have not alleged that they had in place "procedures reasonably adapted to avoid any such error" as required for an affirmative "bona fide error" defense under 15 U.S.C. § 1692k(c). Taking the allegations in the best light for Plaintiff I must presume either that Defendants moved for default recklessly or that they did so knowing full well that Harrington had not defaulted. Either of these are actionable under 15 U.S.C. § 1692f.

In addition, a fraudulent motion for default would also constitute a threat "to take action that cannot legally be taken" in violation of § 1692e(5). Courts have split on the question of whether the FDCPA's prohibition on "threats" to take illegal action covers collectors who actually follow through and *take* illegal actions, such as a fraudulent motion for default. The Fifth Circuit and district courts in the Sixth and Ninth Circuits have held that § 1692e(5) covers completed illegal acts as well as the threats to commit those acts. *See Poirier v. Alco Collections, Inc.*, 107 F.3d 347, 350–51 (5th Cir.1997); *Marchant v. U.S. Collections West, Inc.*, 12 F.Supp.2d 1001, 1006 (D.Ariz.1998) ("defendants assert that they made no threat; they simply took action. I think that such argument elevates form over substance. To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority ... would defy the very purposes of the section."); *Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 803 (S.D.Oh.2006); *Sprinkle v. SB & C Ltd.*, 472 F.Supp.2d 1235, 1247 (W.D.Wash.2006) ("[C]ourts have recognized the futility of a statutory scheme that would provide more protection to debt collectors who violate the law than to those who merely threaten or pretend to do so.... The opposite conclusion would be akin to attaching liability to one who merely threatens a tortious act while absolving one who unabashedly completes it.")

Some district courts in the Sixth and Seventh Circuits have gone the opposite way. *See Clark v. Pollard*, 2000 WL 1902183, *3, 2000 U.S. Dist. LEXIS 18934, *7 (S.D.Ind.2000) ("by its plain language, subsection (5) applies to threats of action, not actions actually taken"); *Delawder v. Platinum Fin. Servs. Corp.*, 443 F.Supp.2d 942, 948 (S.D.Oh.2005). The First Circuit

has not addressed the scope of § 1692e(5)'s prohibition against "threats."

I find the reasoning of the majority rule persuasive, and the minority cases distinguishable. In *Clark,* the court considered an action that had in fact been found legal by the state court; the federal plaintiff was now asking the federal court to collaterally contradict the state court's interpretation of state law, which it refused to do. Here, I am not asked to second-guess the state court. Indeed, the parties agree that the granting of default judgment in state court was improper.

Thus, I **DENY** the motion to dismiss as to the second allegation of Count I. Whether this was a bona fide error is a factual issue to be decided at a later stage.

### D. *Allegations 3 & 4: Filing Suit While CACV was a Foreign Entity Unregistered with the Massachusetts Secretary of State, and Without Proper Review*

As with improper venue, this conduct occurred with the filing of the underlying lawsuit on November 15, 2004. Insofar as the FDCPA claim is based on it, that claim is time-barred and must be **DISMISSED.** For discussion of the actionability of this conduct under Chapter 93A, *see infra* § VI.B.2.

## VI. *COUNT II: VIOLATIONS OF CHAPTER 93A*

Under this count, Plaintiff claims that Defendants' acts and omissions in connection with recovery of her debt violated Chapter 93A. Plaintiff has not challenged the validity of the underlying debt. Rather she has claimed that specific acts and omissions in Defendants' conduct of the suit violated Chapter 93A.

### A. *Relevant Law*

■ Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ..." Mass. Gen. Laws Ch. 93A § 2(a). Pursuant to Chapter 93A a business practice is unfair and deceptive if it can be found to be "immoral, unethical, oppressive, or unscrupulous; or within the bounds of some statutory, common-law or other established concept of unfairness." *Ellis v. Safety Ins. Co.,* 41 Mass.App.Ct. 630, 640, 672 N.E.2d 979 (1996).

■ Violations of the FDCPA are per se violations of Chapter 93A. *See* 940 C.M.R. § 3.16(4); *see Martin v. Sands,* 62 F.Supp.2d 196, 201 (D.Mass.1999). However, the converse is not true: an act that does not violate the FDCPA may still violate Chapter 93A. *See Schubach v. Household Finance Corp.,* 375 Mass. 133, 135–37, 376 N.E.2d 140 (1978).

Plaintiff argues that Defendants' conduct violated nine sections of the Code of Massachusetts Regulations that set forth forms of conduct that are "unfair or deceptive" under Chapter 93A:

1. *209 C.M.R. 18.15*—prohibits harassment or abuse (as exemplified by an inexhaustive list of conduct) in connection with the collection of a debt by a debt collector;

2. *209 C.M.R. 18.16(2)*—makes the false representation of the amount of debt owed or any compensation the debt collector may receive upon recovery a violation of Chapter 93A;

3. *209 C.M.R. 18.16(4)*—debt collector is prohibited from suggesting that nonpayment of the debt will result in imprisonment or seizure of property or garnishment of wages unless the debt collector can legally take the action and intends to take the action;

4. *209 C.M.R. 18.16(5)*—prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken";

5. 209 C.M.R. 18.16(10)—prohibits the use of deception to collect a debt.

6. *209 C.M.R. 18.17*—general provision provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt"; also contains a limited list of activities that are prohibited under this section.

7. *209 C.M.R. 18.17(1)*—prohibits "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

8. *940 C.M.R. 3.16*—Subsection 1 provides that an act is a violation of 93A if "it is oppressive or otherwise unconscionable in any respect;" Subsection 2 relates to disclosure that may affect a buyer's decision; Subsection 3 indicates that an act may violate 93A if warranted by public policy; Subsection 4 indicates that 93A is violated if Federal consumer protection statutes are violated.

9. *940 C.M.R. 7.07(2)*—indicates that, inter alia, a deceptive act is "any knowingly false or misleading representation in any communication as to the character, extent or amount of the debt, or as to its status in any legal proceeding . . ."

The conduct alleged by Plaintiff, however, does not fit within most of these regulations. She has not alleged that Defendants were abusive as defined under 209 C.M.R. § 18.15. That regulation refers to facially abusive conduct such as "the use or threat of use of violence," the "use of obscene or profane language," harassment by repeated or anonymous telephone calls, home visits at odd hours, etc. *Id.* The conduct alleged in this case—the filing of legal process—was not abusive on its face and does not fit into this category of behavior. Nor has Harrington alleged that Defendants used false, deceptive, or misleading representation in regards to the character or amount of the debt, or attempted to collect the debt by deception, as under 209 C.M.R. § 18.16(2), (4), or (10). She has not alleged that Defendants attempted to collect a debt she did not lawfully enter into, as under 209 C.M.R. § 18.17(1). She has not alleged that Defendants failed to disclose information that would have affected her decision to buy a product or that Defendants' actions violated public policy, as required for a violation of 940 C.M.R. § 3.16(2).

Provisions that are relevant to Defendants' alleged conduct include: 209 C.M.R. § 18.16(5) (threat to take action that cannot legally be taken); 940 C.M.R. § 3.16(1) (unconscionability); and 940 C.M.R. § 7.07(2) ("knowingly false or misleading representation . . . as to [the debt's] status in any legal proceeding . . .").

Defendants argue erroneously that since there is no claim under the FDCPA there can be no claim against them under Chapter 93A. Plaintiff properly counters that both the FDCPA and Chapter 93A provide separate bases of liability. Defendants give no further argument under Chapter 93A other than to say conclusorily that their conduct was not unfair or deceptive. Thus, it is necessary to analyze the allegations and citations in the Plaintiff's complaint.

### B. *Analysis of Allegations*

### 1. *Improper Venue*

■ Under 940 C.M.R. § 3.16(4), conduct violates Chapter 93A if "[i]t violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act

or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2." The FDCPA is part of the Federal Consumer Credit Protection Act, so that a substantive violation of one of its provisions is a per se violation of Chapter 93A. *See Martin v. Sands,* 62 F.Supp.2d at 201.

Defendants violated the FDCPA when they filed suit in Barnstable District Court, 21 miles from Plaintiff's home, instead of Falmouth District Court, in whose jurisdiction her home was actually located. 15 U.S.C. § 1692i; *see supra* § V.B. The facts are not in dispute. Nor have Defendants claimed that their choice of venue was a bona fide error. Indeed, their pre-lawsuit collection communications demonstrated that they were well aware of Harrington's correct home address.

Though Plaintiff's claim for improper venue under the FDCPA is time-barred, her claim under Chapter 93A survives.

### 2. *Filing Suit Without Being Registered, and Improperly Moving for Default*

■ Again, since any violation of the FDCPA is a violation of Chapter 93A under 940 C.M.R. § 3.16(4), any claim based on the improper motion for default should survive so long as the corresponding FDCPA claim survives.

In addition, Defendants' alleged actions may have been unconscionable in violation of 940 C.M.R. § 3.16(1). Massachusetts case law does not specifically define unconscionability in the context of Chapter 93A. In *Penney v. First National Bank of Boston,* 385 Mass. 715, 721, 433 N.E.2d 901 (1982), the court noted that, "[b]ecause there is no clear, all-purpose definition of 'unconscionable,' nor could there be, since a general definition could not be stated, unconscionability must be defined on a case by case basis, giving particular attention to whether . . . the [conduct] constitut-

ed an unfair surprise or was oppressive to the allegedly disadvantaged party."

If Defendants intentionally moved for default when they knew that Harrington was not in default, lying to the state court in order to harass or trick Harrington, there is no doubt that that would involve "unfair surprise," and would be unconscionable by any definition.

As for the initial filing of the lawsuit without proper registration as a foreign corporation, it is difficult to see how this could be "unfair surprise" or "oppressive" to Harrington. Indeed, her experience of the filing was unaffected by CACV's registration or lack thereof.

But Defendants' alleged conduct—both the improper motion for default and the improper filing of the lawsuit itself—may also constitute threats "to take . . . action that cannot legally be taken" under 209 C.M.R. § 18.16(5). The collection suit as originally brought was an action that could not be legally taken for two reasons. First, under the FDCPA, a debt collector may not legally bring a collection suit in a judicial district other than the debtor's home district or the district in which the debt was contracted. *See* 15 U.S.C. § 1692i. Second, under Mass. Gen. Laws ch. 156D, § 15.02(a), "[a] foreign corporation transacting business in the Commonwealth without delivering to the Secretary of State for filing the certificate required by section 15.03 shall not maintain a proceeding in any court in the Commonwealth until the certificate is delivered and filed."

As with the identically-worded section of the FDCPA, it is not clear whether this section covers illegal actions actually taken, or only threats. There is no case law construing the scope of the prohibition or defining "threat" under 93A. In the absence of any state authority, I adopt the same interpretation as I do for the identi-

cal language under the FDCPA, and hold that a completed action can be a "threat to take action" if it is intended to be harassing, as Harrington has alleged. *See supra* § V.C.

Finally, a fraudulent motion for default may also constitute "knowingly false or misleading representation in [a] communication ... as to [the debt's] status in any legal proceeding" under 940 C.M.R. § 7.07(2). No case law construes the meaning of "communication," which here would have to be interpreted broadly to include court filings in addition to direct communications from the collector to the debtor. However, I need not decide this issue here, as a claim under 940 C.M.R. § 7.07(2) turns on the same factual question—whether Defendants acted intentionally, or whether the filings were bona fide errors—as a claim of taking illegal action under 209 C.M.R. § 18.16(5) or a claim of unconscionability under 940 C.M.R. § 3.16(1). If Defendants acted intentionally, Plaintiff can recover under any of these provisions; she would not be entitled to triple recovery for the same conduct merely because it meets multiple descriptions.

### C. *Conclusion as to Count II*

On the undisputed facts in the record, Defendants violated 940 C.M.R. § 3.16(4) when they violated the FDCPA by filing suit in the wrong venue. Defendants may still raise an issue of material fact if they adduce evidence that their choice of venue was a "bona fide error" as defined in 15 U.S.C. § 1692k(c).

Further, taking the facts in the best light for Plaintiff, Defendants also violated 940 C.M.R. § 3.16(4) by intentionally filing an improper motion for default, acted unconscionably in violation of 940 C.M.R. § 3.16(1), threatened and took "action that cannot legally be taken" in violation of 209 C.M.R. § 18.16(5), and possibly made a

"knowingly false or misleading representation in [a] communication ... as to [the debt's] status in any legal proceeding" under 940 C.M.R. § 7.07(2). Thus, I **DENY** Defendants' motion to dismiss as to Count II. Plaintiff's 93A claims must wait on a determination of whether Defendants can raise a successful bona fide error defense.

## VII. *COUNT III: INFLICTION OF SEVERE EMOTIONAL DISTRESS*

In her third Count, Plaintiff alleges that Defendants intentionally caused her severe emotional distress.

Massachusetts law recognizes both intentional and negligent infliction of severe emotional distress. Plaintiff's complaint refers only to "infliction of severe emotional distress," Compl. at ¶ 56. As she makes no allegation of physical symptoms, as is required to make out a claim for negligent infliction of emotional distress, *see Payton v. Abbott Labs,* 386 Mass. 540, 557, 437 N.E.2d 171 (1982), I construe her claim as alleging intentional infliction of emotional distress ("IIED").

■ To prevail on a claim for IIED, a plaintiff must establish "(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct ... (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." *Tetrault v. Mahoney, Hawkes & Goldings,* 425 Mass. 456, 466, 681 N.E.2d 1189 (1997) (internal quotations omitted).

■ Whether Defendants' conduct was extreme or outrageous turns on the same

question of fact as the claims in Counts II: whether Defendants knew that their motion for default judgment was baseless, but filed it anyway, intending to win a judgment by trickery. Lying to a court in order to deprive an alleged debtor of her rights would arguably be "outrageous," but an honestly mistaken filing would not be. *See e.g. Beecy v. Pucciarelli, et al.,* 387 Mass. 589, 597, 441 N.E.2d 1035 (1982) (collection attorney's mistaken filing of lawsuit, withdrawn once the attorney discovered that the debtor was not delinquent on the debt, was not extreme and outrageous); *Tetrault,* 425 Mass. at 466, 681 N.E.2d 1189 (conduct of estate attorney was not extreme and outrageous when he failed to consult properly with a testator). As Defendants' knowledge and state of mind remains an issue of material fact, I must DENY Defendants' Motion to Dismiss on this Count.

## VIII. *COUNT IV: DEFENDANT CACV'S FAILURE TO SUPERVISE DEFENDANT CAMBECE*

Plaintiff alleges in her complaint that Defendants negligently failed to supervise their agents and employees. As Defendants point out, they cannot be held liable for negligent supervision if Plaintiff's claims for direct liability in Counts I, II, and III fail. Thus, this count must wait on the resolution of those claims.

Though, as Defendants point out, Plaintiff has not yet alleged specific failures or omissions in their supervision, she is not required to do so at this stage. It is sufficient that she has alleged that Cambece made specific errors (if they were not intentional acts) that injured her during the time that CACV had a duty to supervise Cambece. She is not required to plead the internal workings of her adversaries in her complaint.

## IX. *CONCLUSION*

Defendants' motion to dismiss (document entry # 7) is **GRANTED IN PART AND DENIED IN PART.**

First, insofar as Count I makes out FDCPA claims based on conduct occurring before July 14, 2005—filing suit in an improper venue, filing suit while not registered with the Secretary of State, or filing suit without proper review of the case file—it is hereby DISMISSED as time-barred under the FDCPA's statute of limitation.

However, the motion to dismiss is hereby DENIED as to FDCPA claims in Count I based on the improper motion for default, which occurred after July 14, 2005. As to those claims, an issue of material fact—whether Defendants knowingly filed a motion for default in order to harass or trick Plaintiff—remains in dispute. Thus, taken in the best light for Plaintiff, that conduct may violate 15 U.S.C. §§ 1692e(5) (threatening to take action that cannot legally be taken), and/or 1692f (unconscionability).

The motion to dismiss is hereby **DENIED** as to all of Count II. Defendants' alleged conduct is actionable under Mass. Gen. Laws Ch. 93A for violations of 940 C.M.R. § 3.16(4) (violating the FDCPA), 940 C.M.R. § 3.16(1) (unconscionability), 209 C.M.R. § 18.16(5) (threatening to take action that cannot legally be taken), and 940 C.M.R. § 7.07(2) (knowingly misrepresenting the status of a legal proceeding relating to the debt). Because of Chapter 93A's four-year statute of limitations, this claim survives as to all of Defendants' alleged conduct—from the filing of the suit in improper venue and without registration to the improper motion for default.

Defendants' motion to dismiss is hereby **DENIED** as to Count III, intentional in-

fliction of emotional distress, and Count IV, negligent supervision.

For the reasons set forth above, Defendants Motion To Dismiss (document entry # 7) is **GRANTED IN PART AND DENIED IN PART.**

**SO ORDERED.**