BAYBANK CONNECTICUT,
N.A., Plaintiff,

v.

Robert KRAVITZ, Executor of the Estate
of Walter Kravitz, and Barbara
Kravitz, Defendants.

Civil Action No. 95–30240–FHF.

United States District Court,
D. Massachusetts.

Feb. 6, 1997.

Dennis E. McKenna, Riemer & Braunstein, Boston, MA, for Baybank Connecticut, N.A.

John A. Cvejanovich, O'Connell, Flaherty & Attmore, Springfield, MA, for Walter Kravitz, Barbara Kravitz.

*MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT BARBARA KRAVITZ'S MOTION TO AMEND ANSWER (Docket No. 17) and MOTION TO AMEND of DEFENDANT ROBERT KRAVITZ, EXECUTOR OF THE ESTATE OF WALTER KRAVITZ (Docket No. 20)*

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

The instant matter concerns the efforts by Plaintiff BayBank Connecticut, N.A. ("BayBank"), to collect on a note executed on March 1, 1992 by Walter Kravitz and to enforce the terms of a certain Preferred Ship Mortgage ("mortgage") granted as security for the note. The mortgage was signed on May 14, 1992, by Walter Kravitz as guarantor and, ostensibly, by Barbara Kravitz as mortgagor.

At the time the mortgage was executed, Barbara Kravitz was the sole owner of the vessel known as "Barb's Way." Because the vessel was beyond the limits of the United States at the time this action was commenced, BayBank sought and was granted a writ of attachment in the amount of $30,000 on the real property of Barbara Kravitz located in Longmeadow, Massachusetts.

On December 28, 1995, subsequent to the issuance of the writ of attachment, Walter Kravitz and Barbara Kravitz answered the complaint and, in applicable part, admitted that Barbara Kravitz had executed the mortgage. Curiously, Walter Kravitz denied that, as guarantor, he executed and delivered the very same mortgage to BayBank. In any

case, the parties have since informed the Court that no discovery was undertaken pursuant to the scheduling order, which had otherwise required that written discovery requests be filed by May 15, 1996.

Walter Kravitz died on May 23, 1996 and a suggestion of death was filed shortly thereafter. (*See* Docket No. 16.) Robert Kravitz, Walter Kravitz's son and Barbara Kravitz's stepson, was appointed executor of the estate on November 6, 1996. Soon thereafter, Robert Kravitz moved to substitute the estate for Walter Kravitz as a party to the action, which motion was allowed. (*See* Docket No. 18.)

Robert Kravitz, as executor of the estate of Walter Kravitz, and Barbara Kravitz (collectively "Defendants") now seek to amend the answer originally provided, describing that answer as "untrue and in error."[1] In essence, Defendants assert that Walter Kravitz not only signed his own name to the mortgage as guarantor, but signed Barbara Kravitz's name as mortgagor. Both Defendants now assert that "[s]aid signature is a forgery." Barbara Kravitz herself further asserts that she never instructed, authorized or allowed Walter Kravitz to sign her name, that she was not aware of the forgery and that when she received a demand from Bay-Bank relative to the mortgage, and indeed the complaint itself, Walter Kravitz indicated to her that he would handle the entire matter. Historically, Barbara Kravitz continues, Walter Kravitz had undertaken all business dealings with BayBank concerning the note and that she "had no part in the preparation and formation of the Answer to the complaint herein, the matter having been directed solely by Walter Kravitz." Moreover, both Defendants assert that "[t]hroughout the pendency of this suit, Barbara Kravitz was unaware of the status of the suit, the existence of the forgery and of the admissions attributed to her."[2]

## II.  DISCUSSION

Although admissions in pleadings are generally binding on the party who made them, *see, e.g. Action Mfg., Inc. v. Fairhaven Textile Corp.,* 790 F.2d 164, 165 (1st Cir.1986); *Romero Reyes v. Marine Enterprises, Inc.,* 494 F.2d 866, 868–69 (1st Cir.1974), Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." The United States Supreme Court has stated that the liberal amendment policy of Rule 15(a) is a mandate to be heeded. Even so, an amendment need not be granted in the face of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 183, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). *See also Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 59 (1st Cir.1990) (amendment that "would be futile or would serve no legitimate purpose" should not be allowed). Applying these policies to Defendants' motions to amend their answers, the Court allows Barbara Kravitz's motion, but denies Robert Kravitz's motion as executor of Walter Kravitz's estate.

### A.  Barbara Kravitz

With respect to Barbara Kravitz, her motion was filed in a timely manner given the information she had. Thus, as both she and Robert Kravitz assert, Barbara Kravitz was only made aware of the forgery at some time after the death of her husband. It was

1. Although the original answer was filed on behalf of both Walter and Barbara Kravitz, Defendants now pursue independent motions to amend and, accordingly, attach separate answers to their motions.

2. The Court noted at oral argument that Walter and Barbara Kravitz had both apparently signed a statement pursuant to Local Rule 16.1 certifying that they had conferred with their counsel concerning a litigation budget and to consider and discuss the resolution of the litigation through the use of alternative dispute resolution programs. (*See* Docket No. 15.) The certification was signed as well by Defendants' counsel, John A. Cvejanovich. At oral argument, Barbara Kravitz, through Mr. Cvajanovich, indicated that it was not her signature on the certificate. Indeed, her signature on the certificate very much mirrors the signature on the mortgage, which Barbara Kravitz alleges is a forgery as well. Her signature on the motion to amend, which she has verified, is clearly distinct.

then that she learned from Robert Kravitz, as it turns out, that her husband had admitted to Robert Kravitz that he had forged her name to the mortgage; she then examined the mortgage for the first time and saw the forgery. It therefore cannot be said that her request to amend results from any bad faith or dilatory motive. *Cf. Garwood v. Int'l Paper Co.*, 666 F.2d 217, 219–20 (6th Cir.1982) (mistake in the answer learned immediately prior to motion).

Neither is there any apparent futility to the amendment. Assuming the truth of Barbara Kravitz's allegations, the amendment creates not only a possible defense to BayBank's action, but a potential cross-claim against Walter Kravitz's estate as well. As indicated, the vessel "Barb's Way" is solely owned by Barbara Kravitz and has been encumbered by a mortgage which she may not have granted.[3]

The Court has considered, as it must, that its allowance of Barbara Kravitz's motion may result in some prejudice to BayBank. See *Palumbo v. Roberti*, 834 F.Supp. 46, 54 (D.Mass.1993) (citing cases). Thus, as BayBank argues, it did not pursue or need to pursue any discovery given the admissions in the original answer. Were the amendments allowed, BayBank argues, it would necessarily have to undertake discovery without the presence of Walter Kravitz, who had otherwise admitted the genuineness of the executed mortgage. In the Court's view, however, this prejudice is not "undue" with respect to Barbara Kravitz, and she should have the opportunity to pursue not only this defense but potential cross-claims against the estate. See *St. Paul Fire and Marine Insurance Company v. United States*, 31 Fed.Cl. 151, 153 (1994) (defendant entitled to file amended answer when there is no showing of undue prejudice) (citing cases).

In short, at this stage of the proceedings, there is no indication that the amendment to Barbara Kravitz's answer would be futile or serve no legitimate purpose. Because the underlying facts and circumstances relied upon by Barbara Kravitz appear to be a proper subject of relief, she ought to be afforded an opportunity to test her pleading on the merits. See *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.

### B. Walter Kravitz

■ Walter Kravitz's motion, on the other hand, faces a number of obstacles which Barbara Kravitz's motion does not. First, there is clearly undue delay in the filing of the motion. See *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir.1983) (court acted within its discretion when denying motion to amend filed after seventeen months of discovery, after discovery deadline had been set, and days before pre-trial statements were due); *Barrett v. Foster Grant Co.*, 450 F.2d 1146, 1149 (1st Cir.1971) (no abuse of discretion in refusing to permit amendment of answer after well over a year given potential prejudice to plaintiff). *Cf. Spear v. Somers Sanitation Service, Inc.*, 162 F.R.D. 1 (D.Mass.1995) (amended complaint allowed when requests made early enough to avoid prejudice). Robert Kravitz, who was good enough to reveal the "truth" to Barbara Kravitz as he came to understand it, still stands in the shoes of the decedent. Thus, taking the admission of fraud as true at this time, that fact was as known to Walter Kravitz at the time the answer was filed as it is now known to the executor of his estate. By failing to amend earlier and admit the "truth," Walter Kravitz, through his executor, ought not be given the opportunity to now amend, particularly since he is no longer subject to examination by BayBank.

Second, Walter Kravitz's admission with respect to the genuineness of the signatures on the mortgage should stand, if for no other

---

**3.** At oral argument, both Defendants asserted, through counsel, that according to their information and belief, the vessel is currently in the Bahamas and in the possession of certain individuals who were co-developers of a project in which Walter Kravitz was involved prior to his death. Defendants also asserted that (1) they have had difficulty in re-obtaining possession of the vessel, (2) the vessel may be worth significantly more than $100,000, and (3) they may be willing to transfer any right, title and interest in the vessel to BayBank in settlement of this suit. While those assertions may affect the future course of this litigation, they do not play a part in the Court's consideration of the motions to amend.

reason than to provide a counterweight to Barbara Kravitz's assertion that her signature is a forgery. While this Court is not about to determine the evidentiary ramifications of these contra-indicated assertions, the allegations in the complaint, to the extent that they have been addressed and admitted by Walter Kravitz in his answer, must stand. Otherwise, the prejudice which BayBank faces as a result of the Court's allowance of Barbara Kravitz's motion to amend would become undue prejudice should the Court allow Walter Kravitz's motion as well.

Third, there is also the appearance of bad faith on the part of Walter Kravitz, through his estate, with respect to its efforts to amend the answer at this time. Prior to his father's death, Robert Kravitz knew that his father had evidently forged Barbara Kravitz's signature on the mortgage. Even though Robert Kravitz proceeds in the present matter in a different capacity, the estate and the potential beneficiaries of the estate should not profit from the decedent's deception.[4] While delay itself may be insufficient to deny a motion to amend, this delay coupled with the undue prejudice and possible bad faith is sufficient to convince the Court that Walter Kravitz's motion to amend should be denied.

## III. CONCLUSION

After reviewing the parties' briefs, the relevant rules and applicable case law, and after being fully apprised of the countervailing equities, the Court ALLOWS Barbara Kravitz's motion to amend. On the other hand, for all the reasons stated, the motion of Walter Kravitz's estate is DENIED.

Finally, the Court notes that no cross-claim is included in the answer which Barbara Kravitz has proposed to file. This may well be due to the fact that Defendants are represented by the same counsel, a situation

which this Court finds to be in obvious conflict. Thus, the Court fully expects that substitute counsel will file an appearance and discuss with Ms. Kravitz her potential claims against the estate. The Court will then be prepared to allow yet a further amendment. Accordingly, the Court further ORDERS that substitute counsel file an appearance by March 14, 1997.

IT IS SO ORDERED.

---

4. At oral argument, Robert Kravitz, through counsel, asserted that the estate is insolvent and was probated solely for the purpose of this lawsuit. However, after some inquiry by the Court, it became clear that Walter Kravitz had loaned money to a company owned by Robert Kravitz and that the estate may, in turn, have a claim to those monies. Moreover, the fact that the company, as asserted at oral argument, may itself be considering bankruptcy does not alter the possibility that the estate may have some solvency. Indeed, given the decedent's deception (together with his having apparently transferred the vessel to co-developers in the Bahamas, despite his lack of ownership thereof), the Court questions the true financial condition of Walter Kravitz prior to his death. That is certainly subject to exploration by BayBank, if not Barbara Kravitz as well.