**Pierre MARTIN and Kevin L. Nelson, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Gerald SANDS; Credit Control Services, Inc., d/b/a/ Credit Collection Services; Daniel W. Goldstone; and Goldstone & Sudalter, P.C., Defendants.**

**No. 98–10281–JLT.**

United States District Court,
D. Massachusetts.

July 29, 1999.

Yvonne W. Rosmarin, Arlington, MA, Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Adam B. Goodman, Edelman & Combs, Chicago, IL, for Pierre Martin, Kevin L. Nelson.

Mary M. Sullivan, Sullivan, Sullivan & Pinta, Boston, MA, Robert P. Reske, Joseph Michael Eichberger, Jerome G. McSherry & Associates, Chicago, IL, for Gerald Sands, Credit Control Services, Inc.

Nicholas Parolisi, Thomas A. Carton, Rachelle L. Evans, Bullaro, Carton & Stone, Chicago, IL, for Daniel W. Goldstone.

Harvey Weiner, John J. O'Connor, Peabody & Arnold LLP, Boston, MA, Nicholas Parolisi, Thomas A. Carton, Rachelle L. Evans, Carton & Stone, Chicago, IL, for Goldstone & Suldalter, P.C.

## *MEMORANDUM*

TAURO, District Judge.

Plaintiffs, individuals residing in Illinois, allege that Defendants Credit Control Collection Services (CCS), a Delaware corporation doing business in Massachusetts, and Gerald Sands, CEO of CCS, violated § 1692e, subsections (5) and (10) of the Fair Debt Collection Practices Act (FDCPA), and Massachusetts General Laws by engaging in unfair and deceptive debt collection practices.

Plaintiffs claim that beginning in 1996, CCS sent collection letters containing illegal threats and misrepresentations to thousands of debtors. The letters, received by Plaintiffs Martin and Nelson on September 3, 1996, and October 4, 1996, respectively, purported to be "hard copies" of letters sent to the "Law Offices of Goldstone and Sudalter, P.C." from CCS, and read as follows:

The above referenced account has been assigned to your firm for legal review and coordination. In compliance with standard procedure, unless your office is in receipt of full payment or appropriate dispute documentation by return mail, an individual case sign-off report should be prepared for creditor approval, assigning either the Law Offices of Goldstone and Sudalter, P.C., or forwarding counsel, representation in the recovery of this seriously delinquent obligation.

Before the court are Defendants Sands and CCS' Motion for Leave to Amend their answer, and the parties' cross motions for summary judgment. For the reasons stated below, the court finds that Defendant CCS has violated § 1692e(10) of the FDCPA, and M.G.L.Ch. 93A § 2.

## I.

### Analysis

**A. Defendants Gerald Sands and CCS' Motion for Leave to Amend their Answer**

Defendants seek leave to amend paragraph 8 of their answer, to deny rather than admit that "Sands formulated, directed and implemented the policies and practices contained in this section" [i.e. the creation of the collection letters at issue].

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that parties may amend their pleadings "by leave of the court," and such leave "shall be freely given when justice so requires." Amendments should be granted unless the court finds an inordinate measure of undue delay, dilatory motive, futility, or undue prejudice. *See BayBank Connecticut, N.A. v. Kravitz,* 170 F.R.D. 343, 344 (D.Mass. 1997).

Plaintiffs argue that Defendants' Motion to Amend should be denied because: (1) there was an undue delay of 17 months between the filing of the answer and the Motion to Amend; (2) allowing the Motion would unduly prejudice them since discovery has been completed; and (3) there is dilatory motive in that Defendants are seeking to amend with the sole purpose of creating an issue of material fact to defeat Plaintiffs' Motion for Summary Judgment.

■■ In accordance with *Stepanischen v. Merchants Despatch Transp. Corp,* 722 F.2d 922, 933 (1st Cir.1983), Defendants bear the burden of providing a valid reason for undue delay in moving to amend. Defendants Sands and CCS claim that the admission in paragraph 8 was a mistake on the part of their Illinois counsel, which remained in the answer due to oversight. Even if Defendants' explanation for the delay is inadequate, their motion should not necessarily be denied. *See BayBank Connecticut, N.A.,* 170 F.R.D. at 344 (stating that "delay itself may be insufficient to deny a motion to amend").

Defendants argue that Plaintiffs will not be prejudiced by their proposed amendment because Gerald Sands' July 27, 1998 deposition testimony expressly contradicts the admission, thus putting Plaintiffs on notice of a problem with the pleadings.[1] This argument is questionable, however, because it does not appear to this court that the deposition testimony clearly contradicts the admission.

On the third issue, Plaintiffs offer no evidence of bad faith in the instant case that would militate against allowing the motion to amend. Although Plaintiffs claim that Defendants moved to amend

1. Q: Do you have any supervisory responsibility or involvement in the day-to-day operation in the Collection Division, and by that I mean things like reviewing new form letters, drafting new form letters, divising or implementing new collection strategies, telephone behavior protocol, things like that?

A: I don't get involved in the technical aspects of the organization. As a matter of fact I don't even know how to log into our collection system. That's not one of my strong points.

only when they realized the negative effect of the admission in paragraph 8 on Plaintiffs' Motion for Summary Judgment, all evidence in the record suggests that Defendants' delay was merely a mistake.

■ The most persuasive argument for allowing Defendants' Motion to Amend lies with fundamental fairness concerns. If Defendants were not allowed to amend, Gerald Sands would automatically be held liable for violating the FDCPA, although he claims, and his deposition testimony supports to some extent that he was not responsible for the collection letters at issue. In addition, Defendants wish to change only one word in their answer, which is less disruptive than the proposed amendments that were denied in the cases Plaintiffs cite. *See Stepanischen*, 722 F.2d at 933 (upholding the Massachusetts District Court's denial of plaintiff's motion to amend the complaint to add a breach of contract claim after 17 months of discovery had been completed); *Barrett v. Foster Grant Co.*, 450 F.2d 1146, 1149 (1st Cir. 1971) (upholding the New Hampshire District Court's denial of the defendant's motion to amend the answer to add a novel defense more than a year after the answer had been filed); *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 17 (1st Cir.1979) (upholding the Massachusetts District Court's denial of the plaintiff's motion to amend the complaint "to add his union as a defendant, to add a count against the union for breach of its duty of fair representation, and to supplement the allegations he had made against his employer" after an unexplained two year delay).

Although Defendants' undue delay and lack of explanation for the delay makes this somewhat of a close question, justice requires that Defendants be allowed to amend. To resolve the problem of prejudice, Plaintiffs shall be permitted to conduct limited depositions, with Defendants Sands and CCS bearing the costs of the additional discovery.

**B. *Plaintiffs' and Defendants Sands and CCS' Cross–Motions for Summary Judgment***

Plaintiffs and Defendants each claim that they are entitled to a summary judgment on Plaintiffs' claims that CCS and Sands violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, subsections (5) and (10),[2] and the Massachusetts General Laws chapters 93 and 93A. Summary judgments are appropriate where there is no genuine dispute as to a material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ When considering whether a particular collection notice violates the FDCPA, courts usually look to whether the objective "least sophisticated debtor" would find the notice improperly threatening or misleading. *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993) (stating that the "least sophisticated debtor" "standard has ... been adopted by all federal appellate courts that have considered the issue"). Although Defendants argue that this court should apply the "unsophisticated consumer" test introduced by the Seventh Circuit in *Gammon v. G.C. Services Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994), later decisions by that Circuit clarified that the tests are essentially the same. *See Avila v. Rubin*, 84 F.2d 222, 226 (7th Cir.1996) (rejecting defendants' contention that the "unsophisticated con-

---

**2.** The Fair Debt Collection Practices Act, 15 U.S.C. § 1692e, provides, in pertinent part: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt ... the following conduct is a violation of this section:

...

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken ...

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt ...

sumer" test imposed a different standard than the "least sophisticated consumer" test).

### 1. *Misrepresentations under 15 U.S.C. § 1692e(10)*

Plaintiffs argue that the collection notices violate § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect" a debt, by falsely implying that an attorney was or would be meaningfully involved in collecting Plaintiffs' accounts.

█ CCS' actions violate § 1692e(10) if: (1) the least sophisticated consumer would interpret the collection notices to mean that an attorney was or would be meaningfully involved in collecting their debt; and (2) an attorney was not in fact meaningfully involved. *See Clomon*, 988 F.2d at 1320–21 (holding that letters suggesting that an attorney had personally reviewed each debtor's case before the letters had been sent violated § 1692(10) because the attorney had little or no direct involvement in the collection process).

There are no cases that involve a collection agency sending letters to debtors that purport to have been simultaneously sent to an attorney. However, the situation in the instant case is closely analogous to § 1692(3) [3] cases, in which collection letters on attorney letterhead or with facsimiles of attorney signatures were found to violate the FDCPA when attorneys were insufficiently involved in the debtors' accounts. Those cases stress that when attorney involvement is mentioned or implied, some sort of substantial action on the part of the attorney is necessary. *See Clomon*, 988 F.2d at 1321; *Avila*, 84 F.3d at 229 (stating that "if a debt collector ... wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect the collection of the debt, the debt collector should at least ensure that

an attorney has become professionally involved in the debtor's file.").

█ It is clear that the letters stated that an attorney would be involved in collecting the recipients' debts—the letters purported to "assign" debtors' accounts for "legal review and coordination" and suggested that an "individual case sign-off report" be "prepared."

It is equally clear that G & S was not meaningfully involved in collecting the recipients' accounts. G & S is a law firm with 25 employees, between one and three of whom at any one time are attorneys. (Deposition of Daniel W. Goldstone, p. 36). Although the exact numbers are difficult to find in the record, beginning in 1995, CCS electronically transferred somewhere between 15,000 and 20,000 debtor account records to G & S per week. (Plaintiffs' and Defendants' CCS and Sands' Joint Statement of Undisputed Facts for Summary Judgment Motions p. 4). Such account information consisted of the debtor's name, address and account number, the creditor's name, the amount being collected and the date of the last payment. *Id.* Daniel Goldstone spent between thirty minutes and six hours a week reviewing account information that CCS electronically transferred to G & S. (Joint Statement, p. 4). In 1996, CCS developed a new strategy when G & S became backlogged. Instead of sending G & S electronic information on a weekly basis, CCS began posting debtor information on their own computers in a file that was accessible to G & S personnel, and at the same time began sending to debtors the letters at issue. (*Id.* at 7). It does not appear that the new strategy substantially changed the volume of accounts being transferred, and somewhere near 300,000 debtors received the collection notices in question between July 1996 and March 1997. *See* Supplemental Affidavit of Daniel Goldstone, ¶ 7. G & S did not receive the listed debtors' case files, and no attorney assessed the merits

---

**3.** This section prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney."

of litigating the accounts. *Id.; see also Avila*, 84 F.3d at 229 (stating that a letter mentioning attorney involvement implied that an attorney had made—or would make—"a considered, professional judgment that the debtor [was] delinquent and [was] a candidate for legal action"). In any event, it is very unlikely that any attorney had more than a few seconds of involvement with each debtors' case. In fact, Daniel Goldstone swore in his affidavit that:

> CCS never assigned to me or Goldstone and Sudalter, P.C. responsibility for the collection matters in connection with which CCS issued the subject collection notices. There was a computerized linkage between CCS and Goldstone and Sudalter, but the matters as to which CCS issued the disputed notices were *not* assigned or provided to me or to Goldstone & Sudalter, P.C. via this linkage or in any other way. The files for the debtors who received the disputed notices were never given to me or Goldstone & Sudalter, P.C. *See* Affidavit of Daniel W. Goldstone, paragraph 5.

The undisputed facts indicate that there was no meaningful attorney involvement with the files of debtors who received the disputed letter. Summary judgment in favor of the Plaintiffs is thus appropriate.

■ Independent of the meaningful attorney involvement issue, CCS also violated § 1692e(10) if the collection letters contained objectively false statements. *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60 (2d Cir.1993) (holding that letters stating that accounts had been referred to "my desk" for review violated the FDCPA since no such desk existed). The letters represent that they have been sent by CCS' "Assignment division," a division which did not actually exist. Joint Statement. p. 8. The letters also purported to be "hard copies" of letters simultaneously sent to G & S, which G & S actually never received, but had only remote access to computer files containing the minimal debtor information discussed above.

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is allowed with respect to § 1692e(10).

### 2. *Unfair and Deceptive Practices Under M.G.L.Ch. 93 § 2*

. Plaintiffs argue that Defendants CCS and Sands violated M.G.L.Ch. 93A § 2 because violations of the FDCPA are per se violations of M.G.L.Ch. 93A § 2 in accordance with the Attorney General's Recommendations. *See* 940 CMR 3.16(4).

■ On its face, 940 CMR 3.16(4) supports Plaintiffs' argument that a violation of the FDCPA is a per se violation of M.G.L.Ch. 93A(2). 940 CMR 3.16 provides that: "Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L.Ch. 93A § 2 if: ... (4) it violates ... the Federal Consumer Credit Protection Act [of which the FDCPA is a part] ...." The Attorney General's regulations have the force of substantive law. *See Purity Supreme, Inc. v. Attorney Gen.*, 380 Mass. 762, 407 N.E.2d 297, 299 (1980) (holding that the Attorney General's recommendations as to M.G.L.Ch. 93A § 2 have the force of substantive law pursuant to M.G.L.Ch. 93A § 2(c)).

Therefore, since Defendants have violated § 1692e(10), they have also violated M.G.L.Ch. 93A § 2.

### C. *Remaining Claims on Summary Judgment Motion*

All other aspects of Plaintiffs' Motion for Partial Summary Judgment concerning Defendants Gerald Sands and CCS' liability, Defendants Sands and CCS' Cross Motion for Summary Judgment, and Defendants Goldstone and G & S' Motion for Summary Judgment and Alternative Renewed Motion for Partial Summary Judgment are denied, either because material issues of fact exist, or because the parties have failed to provide the court with sufficient information.

## II.

### *Conclusion*

For the foregoing reasons, Defendants Sands and CCS Motion for Leave to Amend the Answer is allowed. Plaintiffs' Motion for Partial Summary Judgment concerning Defendants Gerald Sands and CCS' liability is allowed with respect to the § 1692e(10) and M.G.L.Ch. 93A § 2 claims. Finally, Defendants Sands and CCS' Cross Motion for Summary Judgment, as well as Goldstone and G & S' Motion for Summary Judgment and Alternative Renewed Motion for Partial Summary Judgment are denied.

AN ORDER WILL ISSUE.

### *ORDER*

The court hereby orders as follows:

1. Defendants Gerald Sands and Credit Control Services (CCS)' Motion for Leave to Amend is ALLOWED;

2. Plaintiffs are permitted to conduct limited depositions to cure any potential prejudice caused by Defendant Sands and CCS' amendment to the original answer;

3. Defendants Sands and CCS are ordered to bear the costs of the additional discovery;

4. Plaintiffs' Motion for Partial Summary Judgment on Liability Against Sands and CCS is ALLOWED in part with respect to their § 1692e(10) and M.G.L.Ch. 93A § 2 claims;

5. Defendants Sands and CCS' Cross Motion for Summary Judgment is DENIED in its entirety;

6. Defendants Daniel Goldstone and Goldstone and Sudalter, P.C.'s Motion for Summary Judgment and Alternative Renewed Motion for Partial Summary Judgment are DENIED; and

7. Defendant CCS' Motion for Leave to File Additional Authority in Support of their Motion for Summary Judgment is ALLOWED.

IT IS SO ORDERED.