Filed 7/2/13  Lee v. American Agencies CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FREIDA LEE,<br><br>        Plaintiff and Appellant,<br>v.<br><br>AMERICAN AGENCIES, et al.,<br><br>        Defendants and Respondents. | A133016, A133752<br><br>(Alameda County<br>Super. Ct. No. RG09477598) |

Plaintiff Freida Lee appeals a judgment and attorney fee award entered after the trial court granted summary judgment to defendants American Agencies, American Credit Agencies, Inc. (ACA, Inc.), and ACA Receivables Co., LLC (ACA Receivables) in this purported class action for unfair debt collection practices.  She contends the trial court erred in granting summary judgment on her claims under the Rosenthal Fair Debt Collection Act (Civ. Code, § 1788 et seq.) and the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) (FDCPA) and in awarding attorney fees to defendants.  We shall reverse the award of attorney fees and otherwise affirm the judgment.

## I.  BACKGROUND

### A.  The Allegations of the Complaint

Plaintiff alleged in the operative complaint that on or about September 24, 2008, defendant American Agencies sent her an initial debt collection letter claiming she owed $831.06 on a past due bill from a third party and stating American Agency had purchased the debt from another debt collector.  The letter said nothing about how or when the debt was incurred.  In response, plaintiff sent a letter disputing the debt and requesting the

1

original name and address of the creditor and verification of the debt. She alleged American Agencies did not respond to the request for verification and that it continued to attempt to collect the debt. This attempt, according to the complaint, included reporting plaintiff's debts to consumer credit reporting agencies. According to plaintiff, defendants had a practice of not validating or verifying debts upon consumer request, but instead continuing to call purported debtors and failing to ensure adverse credit reporting was discontinued. Plaintiff also alleged both that defendants were either parents and subsidiaries of each other and that they were in reality one company.

Plaintiff asserted causes of action for violation of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788.17; see also 15 U.S.C. § 1692g), violation of California's unfair competition law (Bus. & Prof. Code, § 17200), and declaratory and injunctive relief.

### B. Motion for Summary Judgment

Defendants moved for summary judgment, arguing that (1) they were not obligated to verify the debt if they discontinued collection efforts; (2) they did not continue collection efforts after plaintiff requested verification of the debt; and (3) they did not report the debt to credit bureaus after plaintiff requested verification.

The evidence submitted in support of the motion for summary judgment included the original letter from American Agencies demanding payment of a debt, the original creditor of which was "PACIFIC BELL TEL/dba SBC:CALIF." The letter, which was dated September 24, 2008, notified plaintiff that "the above account, which was previously purchased, has now been assigned to this office for collection by Asset Acceptance, LLC," and stated, "If you notify this office in writing within 30 days from receiving this notice that you dispute this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor if different from the current creditor."

2

In a letter to American Agencies dated October 3, 2008, plaintiff responded: "I dispute the above purported debt. I request the original name and address of the original creditor and verification of the debt. I specifically request any document that shows I have any such obligation. [¶] If you have any question, do not hesitate to call."

Leticia Holguin called plaintiff on October 16, 2008. Plaintiff did not answer the telephone, and Holguin left a message. In a declaration, she stated: "I attempted to contact Ms. Lee on October 16, 2008, pursuant to her express invitation to contact her, and solely for the purposes of inquiring about Ms. Lee's request for verification. This attempt to contact Ms. Lee was not made for collection purposes."

Plaintiff sent another letter to American Agencies, dated December 8, 2008, stating, "On October 3, 2008, I disputed the above purported debt, requesting the original name and address of the original creditor and verification of the debt. I specifically requested any document that shows I have any such obligation. [¶] I have heard nothing from you. Please note the dispute and provide the verification forthwith. [¶] If you have any questions, do not hesitate to call."

In response to plaintiff's December 8, 2008 letter, Holguin tried to contact plaintiff by telephone on December 24, 2008, and January 6, 2009, in order to inquire about her request for verification. Plaintiff did not answer the calls, and Holguin did not leave a message.

In her deposition, when asked if American Agencies had contacted her by telephone, plaintiff testified that she did not know if they had contacted her, that someone left messages on her main switchboard line, that the caller did not leave a name, that she called back to find out who the calls were for, and that "they couldn't give [her] any information."

The debt collection account was cancelled on April 3, 2009.

Craig Impelman, the Vice President of Operations at ACA Receivables Co., LLC, dba American Agencies, stated in a declaration that neither ACA Receivables nor ACA,

3

Inc. ever reported plaintiff's alleged debt to any credit reporting agency.[1]  Plaintiff's credit report showed that the alleged debt had been reported to a credit agency by November 2007, and that plaintiff disputed the debt.  Asset Acceptance, Inc. was named as the creditor.

Impelman also declared that "ACA Receivables Company, LLC dba American Agencies is the only entity that has ever had any involvement with Plaintiff Freida Lee's collection account."  According to Impelman, American Agencies is a fictitious business name of ACA Receivables.  ACA, Inc. previously owned the American Agencies fictitious business name.

In opposition to the motion for summary judgment, plaintiff submitted evidence that if a customer disputed a debt and defendants decided to cease and desist from collection, the macro ",496" should be used.  The collection notes on plaintiff's account do not reflect the macro ",496" to "cease and desist."  A document American Agencies used in training stated that if a consumer disputed the validity of a debt within 30 days of receiving a validation notice, federal law required the debt collector to obtain actual verification of the debt from the creditor and mail it to the consumer, as well as the name and address of the original creditor if requested by the consumer.  The document also said that if the consumer disputes the debt, a debt collector should either "abandon collection efforts and close the account," or "cease collection action until verification of the debt has been obtained from the creditor and mailed to the consumer."  If the consumer disputed the debt within the 30-day validation period, according to the training document, "American Agencies ceases all collection efforts and requests 'full backup' on the debt from the creditor. . . . [¶] Upon receipt, American Agencies then mails this information to the consumer at which point collection efforts may be resumed."

Plaintiff submitted a portion of the Code of Ethics and Code of Operations of the Association of Credit and Collection Professionals, which provides that upon receipt of a

---

[1] In verifying responses to interrogatories, Impelman had identified himself as "VP of Operations" of American Agencies, ACA, and ACA Receivables.

4

written request for verification of a debt, a debt collector should suspend collection activities and provide verification of the debt. If the debt collector does not or cannot provide verification of the debt, the debt collector should cease all collection efforts; "[d]irect or request removal of the item from the consumer's credit report or report the item as disputed to the appropriate credit reporting agency"; when closing and returning an account, notify the credit grantor, client, or owner of the debt that collection activity was terminated due in inability to verify the debt; and if requested by the consumer in writing, notify the consumer that collection efforts have been terminated.

Plaintiff also submitted evidence that Holguin testified in her deposition that she called plaintiff to follow up on her dispute and left a message asking plaintiff to return her call. She had been trained that when she called about a disputed account to attempt to collect a balance, she should provide her own name, the name of the company, and a phone number when leaving messages. She had been trained that in handling a disputed account, she should "go over [the] dispute and see what they're actually disputing so we can get the information to them [in] a timely manner." Holguin testified she could also try to settle the matter. Plaintiff stated in a declaration that she did not perceive American Agencies' telephone calls to be debt collection efforts at the time they were made, but that after reading the depositions and discovery responses, she had concluded they were debt collection efforts.

The trial court granted the motion for summary judgment. As to defendant American Agencies, it accepted the evidence that American Agencies was a fictitious business name owned by ACA Receivables, and ruled that plaintiff's claims lay only against the owner of the fictitious business name. In granting summary judgment as to ACA, Inc., the trial court relied on the evidence that ACA, Inc.. sold the name "American Agencies" to ACA Receivables in 2005 and that it did not engage in debt collection. The court found that defendants did not have an independent duty to provide verification of the debt if they did not continue collection activities, and that they did not engage in collection activity after plaintiff requested verification of the debt. The court denied plaintiff's request for a continuance to obtain additional discovery to oppose the motion.

5

## C. Attorney Fees

Defendants moved for attorney fees under Civil Code section 1788.30, subdivision (c), which authorizes an award of attorney fees "to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith." The trial court awarded fees against plaintiff in the amount of $66,818.00.

## II. DISCUSSION

## A. Standard of Review on Summary Judgment

"We review a grant of summary judgment de novo. [Citation.] In performing our de novo review, we employ a three-step analysis. 'First, we identify the issues raised by the pleadings. Second, we determine whether the movant established entitlement to summary judgment, that is, whether the movant showed the opponent could not prevail on any theory raised by the pleadings. Third, *if the movant has met its burden*, we consider whether the opposition raised triable issues of fact.' [Citations.] . . . Any evidence we evaluate is viewed in the light most favorable to the plaintiff as the losing party; we strictly scrutinize the defendant's evidence and resolve any evidentiary doubts or ambiguities in the plaintiff's favor. [Citation.]" (*Barber v. Chang* (2007) 151 Cal.App.4th 1456, 1462–1463.)

In opposing a motion for summary judgment, plaintiffs " 'may not rely upon the mere allegations or denials of [their] pleadings,' but must 'set forth the specific facts showing that a triable issue of material fact exists.' [Citation.] 'The party opposing the summary judgment must make an independent showing by a proper declaration or by reference to a deposition or another discovery product that there is sufficient proof of the matters alleged to raise a triable question of fact if the moving party's evidence, standing alone, is sufficient to entitle the party to judgment. [Citation.] To avoid summary judgment, admissible evidence presented to the trial court, not merely claims or theories, must reveal a triable, material factual issue. [Citation.] Moreover, the opposition to summary judgment will be deemed insufficient when it is essentially conclusionary, argumentative or based on conjecture and speculation.' [Citation.]" (*Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 635.)

6

## B. Duty to Verify Debt

We first examine whether there is any legal merit to plaintiff's contention that defendants had a statutory obligation to verify the validity of the debt after they determined not to proceed with collection. Civil Code section 1788.17 provides in pertinent part, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Section 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." Our state statute thus incorporates portions of the FDCPA.

Plaintiff alleged defendants violated the state statutes by failing to comply with the provisions of the FDCPA requiring verification of debts and by continuing to collect disputed debts. The FDCPA, specifically section 1692g of title 15 of the United States Code (hereinafter § 1692g) requires a debt collector, with certain exceptions, to send to the consumer a written notice containing, inter alia, (1) "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;" (2) "*a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt* or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;" and (3) "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." (§ 1692g, subd. (a), italics added.)

Under section 1692g, if the consumer notifies the debt collector within 30 days that a debt is disputed, or requests the name and address of the original credit, "*the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment*, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. . . ." (§ 1692g, subd. (b), italics added.) Plaintiff contends this language imposes upon

collection agencies the duty to verify the disputed debt whether or not they continue with debt collection efforts.[2] Three federal appellate courts have considered this issue, and each has rejected the position plaintiff espouses.

A panel of the Ninth Circuit considered this question in *Guerrero v. RJM Acquisitions LLC* (9th Cir. 2007) 499 F.3d 926, 940 (*Guerrero*). It agreed with the reasoning of *Jang v. A.M. Miller & Associates* (7th Cir. 1997) 122 F.3d 480, 482–483 (*Jang*), stating: "In *Jang*, consumer plaintiffs claimed that defendants, two debt collection agencies, violated the Act because they never verified the alleged debts after plaintiffs disputed them. [Citation.] The Seventh Circuit, affirming the district court's grant of defendants' motion to dismiss, noted correctly that the Act 'does not require debt collectors to actually provide validation. Rather, it requires that the debt collector cease all collection activity until it provides the requested validation to the debtor.' [Citation.] [¶] A collector, notified that a debt is disputed, thus has a choice. As the court in *Jang* put it, the collector 'may provide the requested validations and continue their [*sic*] debt collection activities, or [it] may cease all collection activities.' [Citations.] It would make little sense to impose an independent obligation to verify an alleged debt on a collector who, for example, decides that a disputed debt is not worth the effort and chooses to close or sell the account. Or, as the court in *Jang* noted, on a collector who, upon receiving a dispute notice, realizes the consumer does not in fact owe the debt and so abandons all costly collection efforts." (*Guerrero*, *supra*, 499 F.3d at p. 940.)

The Sixth Circuit reached a similar result in *Smith v. Transworld Systems, Inc.* (6th Cir. 1992) 953 F.2d 1025, 1031 (*Smith*), stating that because the defendant there ceased collection activities after receiving a cease and desist letter, "defendant was not obligated

---

[2] The requirement of verification has been construed to mean the debt collector, at a minimum, must " 'confirm[] in writing that the amount being demanded is what the creditor is claiming is owed.' " (*Clark v. Capital Credit & Collection Serv.* (9th Cir. 2006) 460 F.3d 1162, 1173–1174.) This may include, for instance, obtaining from the creditor information about the debt and providing the debtor with documentary evidence of the debt. (*Id*. at p. 1174.)

to send a separate validation of the debt to plaintiff." Similarly, the court in *Sanchez v. United Collection Bureau, Inc.* (N.D. Ga. 2009) 649 F.Supp.2d 1374, 1381 (*Sanchez*), stated, "When a consumer requests validation of a debt pursuant to the FDCPA, the debt collector is required to cease collection of the debt until it provides verification of the debt to the consumer. A debt collector is not required to verify the debt, but instead may cease all collection activity on the account." (Accord, *Sambor v. Omnia Credit Services, Inc.* (D. Haw. 2002) 183 F.Supp.2d 1234, 1242, 1243 (*Sambor*) [because debt collector ceased collection activities, it did not violate FDCPA by failing to verify debt]; *Zaborac v. Phillips and Cohen Associates, Ltd.* (N.D. Ill. 2004) 330 F.Supp.2d 962, 966.)[3]

Plaintiff argues that if the debt collector is not required to verify the debt, "the result of simply ceasing [collection efforts] may not be ceasing at all [but] the sale or assignment of the debt and continued collection efforts and roundelays of disputing and sale/assignment ad infinitum." The court in *Jang* considered a similar argument and rejected it, noting first that there was no indication any such thing had happened in the case before it—as there is no indication it has happened here—and second, that "it is for Congress, and not the courts, to close this alleged loophole in the FDCPA." (*Jang*, *supra*, 122 F.3d at p. 484.)

---

[3] Lower federal courts have not always applied this rule consistently. The Ninth Circuit in *Guerrero* reversed the decision of the district court, which ruled that "even if Defendant had ceased with its efforts to collect the alleged debt, Defendant would still have been obligated to verify the debt." (*Guerrero v. RJM Acquisitions, LLC* (D. Haw. July 9, 2004, Civ. No. 03-0038 HG-LEK) 2004 U.S. Dist. Lexis 15416, *27.) The district court also noted that the statute required the debt collector to inform a consumer that the collector would obtain and send verification on the debtor's request, and concluded, "[t]he statute could not have required such a statement without intending that a debt collector be required to follow through with the promise to obtain and send verification." (*Id*. at *27–28; see also *Powell v. J.J. Mac Intyre Co.* (D. Haw. January 23, 2004, Civ. No. 03-00402 DAE BMK) 2004 U.S. Dist. Lexis 2811, *10–11 [concluding debt verification was required regardless of whether agency ceases collection, and distinguishing *Sambor* on ground that debt collector in *Sambor* had returned files to original creditor and hence was not in position to verify debt].) These cases were decided, of course, before the Ninth Circuit in *Guerrero* accepted the *Jang* rule that a debt collector who ceases collection efforts need not provide requested verifications. (*Guerrero*, *supra*, 499 F.3d at p. 940.)

Plaintiff also points to the language of section 1692g, subdivision (a), which requires a debt collector to notify the consumer that if the consumer disputes the debt, the debt collector "will obtain verification of the debt or a copy of the judgment" and a copy of the verification or judgment "will be mailed to the consumer." This statutory language, she argues, indicates the debt collector must provide verification even if it ceases collection efforts after receiving notice of the dispute. The court in *Jang* rejected a similar argument, stating, "After requiring debt collectors to promise verification upon request, the statute allows debt collectors to sidestep this requirement by ceasing all collection activities. Although the statute might be more informative for debtors if it required a notice that the debt collector would either provide the requested verification or cease all collection activities, it is not our job to rewrite the statute." (*Jang*, *supra*, 122 F.3d at p. 484.)

Finally, Plaintiff argues that defendants' own policies and procedures show they understood they were required to provide verification. The issue here, however, is what is required by the state and federal statutes. None of plaintiff's arguments persuade us to depart from the rule of *Jang*, *Smith*, and *Guerrero*. We agree with the trial court that defendants were not required to verify plaintiff's debt if they ceased collection efforts.

## C. Continued Collection Efforts

We next address plaintiff's argument that defendants wrongfully continued collection efforts after receiving plaintiff's dispute letter, as shown both by defendants' failure to ensure that the debt was removed from her credit reports and by Holguin's calls to plaintiff.

### 1. Credit Reporting

It is undisputed that credit reporting may constitute debt collection. (See *Davis v. Trans Union, LLC* (W.D.N.C. 2007) 526 F.Supp.2d 577, 586–587.) Here, however, there is no evidence that defendants reported the debt to any credit agencies; rather, plaintiff acknowledged below that the debt was reported by Asset Acceptance in 2007, before it was assigned to defendants. Moreover, the credit report in the record shows the debt as

disputed.[4]  Plaintiff draws our attention to no authority suggesting that a debt collector who does not arrange for a prior creditor to remove a debt from a credit report thereby engages in collection activity.  The court in *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.* (N.D. Ga. 2003) 323 F.Supp.2d 1344, 1350, rejected a similar contention. The defendant there had already forwarded liens to a county clerk by the time the plaintiffs received debt collection letters.  The clerk recorded the liens after the plaintiffs had requested verification of the debt, but before the defendant provided verification. The plaintiff argued the defendant "was obligated to 'take positive action' to prevent the Clerk from recording the liens once Plaintiffs requested verification of the debt."  (*Ibid.*) The court ruled otherwise, stating, "[t]he plain language of Section 1692g(b) . . . requires only that Defendant 'cease collection of the debt' once verification is requested," and the defendant was not required to prevent the liens from being recorded during the verification period.  (*Ibid.*)  Similarly here, we find no statutory basis to conclude defendants were obliged to take steps—even if they had authority to do so—to have a debt previously reported by a third party removed from plaintiff's credit report.

2.  *Telephone Calls*

Plaintiff contends summary judgment was inappropriate because there is a factual dispute about whether the telephone calls Holguin made constituted collection activity. Pursuant to section 1692g, subdivision (b), if the consumer notifies the debt collector within the 30-day period that a debt is disputed, "the debt collector shall cease collection of the debt, or any disputed portion, thereof,  until the debt collector obtains verification of the debt or a copy of the judgment . . . ."

---

[4] Plaintiff points to the Code of Ethics and Code of Operations of the American Collectors Association International, which states that if a debt cannot be verified, the collector should cease all collection efforts and "[d]irect or request removal of the item from the consumer's credit report *or report the item as disputed to the appropriate credit reporting agency*, at the member's next available opportunity . . . ."  Here, the debt was correctly reported as disputed.  In any case, the issue before us is not whether defendants violated this code of ethics and operations, but whether they violated the applicable statutes.

11

In ruling the telephone calls did not constitute collection activity, the trial court applied the " 'least sophisticated debtor' standard." As explained in *Martin v. Sands* (D. Mass. 1999) 62 F.Supp.2d 196, 199, "When considering whether a particular collection notice violates the FDCPA, courts usually look to whether the objective 'least sophisticated debtor' would find the notice improperly threatening or misleading." "[T]he 'least sophistical debtor' standard is ' "lower than simply examining whether particular language would deceive or mislead the reasonable debtor." ' [Citations.] . . . 'The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.' " (*Wilson v. Quadramed Corp.* (3d Cir. 2000) 225 F.3d 350, 354.) However, "although this standard protects naïve consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.' " (*Id*. at pp. 354–355.)

Both plaintiff and defendants argue the trial court should not have applied the objective, least sophisticated debtor standard, but should instead have applied a subjective standard that looked to defendants' intent in making the telephone calls—that is, to whether the calls were made in connection with debt collection. According to plaintiff, the least sophisticated debtor standard should be used only when the plaintiff has alleged that a communication is deceptive.

We need not resolve the question of whether the trial court properly applied the least sophisticated debtor standard because we conclude that, under any standard, there was no triable issue of fact as to whether defendants continued collection activities. The facts show that when plaintiff disputed the bill on October 3, 2008, she explicitly invited American Agencies to contact her if it had any questions. Holguin called her later that month. Holguin stated in her declaration that she called "solely for the purposes of inquiring about Ms. Lee's request for verification." In her deposition, Holguin testified that she called plaintiff to follow up on the dispute, and that she left a message asking plaintiff to return her call. Holguin had been trained that when she handled a disputed

12

account, she should "go over [the] dispute and see what they're actually disputing so we can get the information to them [in] a timely manner." She also testified she could try to settle the matter.

In a second letter, in December 2008, plaintiff told American Agencies she had heard nothing in response to her dispute and again invited American Agencies to call if there were any questions. Holguin called twice more, but plaintiff did not answer her telephone and Holguin did not leave a message; she stated that the calls were made to inquire about the request for verification, not for collection purposes. On this record— particularly in light of plaintiff's express invitation for American Agencies to call if it had questions about her dispute—no trier of fact could conclude defendants continued with collection efforts after plaintiff disputed the debt.[5] (See *Hubbard v. National Bond & Collection Assoc., Inc.* (D. Del. 1991) 126 B.R. 422, 428 [verification process of 15 U.S.C. § 1692g allows debt collector to learn "the reasons, if any, for the debtor's refusal to pay" and "ensures a cost effective means by which a debtor and debt collector can exchange information"].)

We are not persuaded otherwise by plaintiff's reliance on *Allen v. ATG Credit LLC* (N.D. Ill. Dec. 14, 2004, No. 03-C-5971) 2004 U.S. Dist. Lexis 25304. In response to a letter informing her she could challenge the validity of a debt, the plaintiff there sent a letter to a debt collector requesting verification and documentation of the debt, and asked that future communications be made by mail, not telephone. (*Id*. at *2–3.) The debt collector responded by providing a list of charges that were allegedly owed. It then placed five phone calls to the plaintiff's residence, assertedly to confirm that she had received the verification. The plaintiff did not receive the calls, and the debt collector did not leave a message. (*Id*. at *3.) In the course of denying the defendant debt collector's

---

[5] The trial court sustained certain objections to the declaration of plaintiff's counsel on the grounds that they contained improper legal conclusions, argument, and hearsay. Plaintiff contends that if, based on those sustained objections, the trial court failed to consider the evidence attached to counsel's declaration as exhibits, the trial court erred. In our own review, we have considered the evidence included in the exhibits, and we conclude summary judgment was properly granted.

13

motion for summary judgment on multiple grounds, the court stated, "[Defendant's] business records show that it telephoned [plaintiff] approximately five times after the verification request. While [defendant] claims that it only attempted to contact [plaintiff] to verify that she had received the information she requested, the Court finds that the jury is in the better position to decipher [defendant's] motivation." (*Id*. at \*10–11.) Here, in contrast, plaintiff herself invited American Agencies to call if it had any question about her dispute, and defendants submitted uncontradicted evidence that the calls were made in response to that invitation.

Because we conclude the trial court properly granted summary judgment on the ground that there was no statutory violation, we need not consider whether summary judgment was also proper as to American Agencies and ACA, Inc. on the independent grounds that American Agencies is a fictitious business name and that ACA, Inc. did not own the name American Agencies during the times relevant to this dispute.

## D. Request for Continuance

In her opposition to the motion for summary judgment, plaintiff sought a continuance in order to complete discovery regarding putative class members who may have been subject to the same practices alleged by plaintiff, and about whether defendants used the ",496" macro on the accounts of putative class members who disputed debts. According to plaintiff, such discovery was relevant to the question of defendants' intent in making the telephone calls. She also sought discovery about defendants' contract with Asset Acceptance—the assignor of the debt—which she asserted might "show notice of obligations regarding verification and credit reporting." In a supporting declaration, plaintiff's counsel stated that plaintiff had filed a motion to compel discovery regarding these putative class members, and that the court had twice issued directives indicating the discovery was not relevant to the issues pertinent to summary judgment and suggesting that the discovery motions be put off until after the summary judgment motion was heard. In a supplemental declaration, plaintiff's counsel requested time to subpoena records of when and how the debt was reported to credit agencies. The trial court denied the request for a continuance, finding, "Plaintiff has not

14

shown that facts essential to justify an opposition may exist or valid reasons that those facts could not have been obtained through more diligent efforts and presented with her opposition." Plaintiff contends the trial court should have granted the continuance to allow further discovery.

Code of Civil Procedure section 437c, subdivision (h), provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. . . ." Thus, to be entitled to a continuance, a plaintiff is "required to show, by affidavit, that facts essential to his opposition to the summary judgment motion existed, and the reasons why they could not be presented at the time of the motion." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 511.) We review the trial court's denial of a request for a continuance for abuse of discretion. (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254.)

We find no abuse of discretion here. As we have explained, the undisputed facts show Holguin called plaintiff after plaintiff expressly invited American Agencies to do so, that defendants engaged in no other actions toward plaintiff after she disputed the debt, and that defendants did not report the debt to credit bureaus. On this record, the trial court could reasonably conclude plaintiff did not show that discovery about other putative class members and credit reporting would reveal facts essential to oppose the motion for summary judgment.

## E. Attorney Fees

Defendant sought attorney fees under Civil Code section 1788.30, subdivision (c), which authorizes an award of attorney fees "to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith." Upon defendants' motion, the trial court awarded attorney fees against plaintiff in the amount of $66,818.00. Plaintiff contends this award was made in error.

15

An award of attorney fees under Civil Code section 1788.30, subdivision (c), is discretionary. (*Gouskos v. Aptos Village Garage, Inc.* (2001) 94 Cal.App.4th 754, 764.) The parties have not cited, and our own research has not disclosed, any California cases discussing the standard to be applied where a prevailing defendant seeks attorney fees under this statute. However, a nearly identical attorney fee provision may be found in Civil Code section 1780, subdivision (e), a portion of the Consumer Legal Remedies Act (Civ. Code. § 1750 et seq.), which provides in pertinent part: "Reasonable attorney's fees may be awarded to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good faith." This provision has been interpreted to require a finding of subjective bad faith. (*Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 920–924 (*Corbett*); *Shisler v. Sanfer Sports Cars, Inc.* (2008) 167 Cal.App.4th 1, 9.) "When a tactic or action utterly lacks merit, a court is entitled to infer the party knew it lacked merit yet pursued the action for some ulterior motive." (*Corbett*, *supra*, 119 Cal.App.4th at p. 928.) "*Good faith*, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind [citations]: Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it? A subjective state of mind will rarely be susceptible of direct proof; usually the trial court will be required to infer it from circumstantial evidence. Because the good faith issue is factual, the question on appeal will be whether the evidence of record was sufficient to sustain the trial court's finding." (*Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 932, overruled on another point in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7.)

The trial court here found plaintiff did not act in good faith in pursuing her action. It concluded that many of plaintiff's allegations "were baseless (or put another way, were not 'minimally colorable')."[6] The court noted that the contention that defendants were obliged to verify the debt even if they did not continue collections had "been firmly

---

[6] The FDCPA allows an award of attorney fees to a defendant where the court finds an action "was brought in bad faith and for the purpose of harassment . . . ." (15 U.S.C. § 1692k, subd. (a)(3).) This statute has been construed to allow fees where a plaintiff's claims are not "minimally colorable." (*Guerrero*, *supra*, 499 F.3d at p. 940; *Sanchez*, *supra*, 649 F.Supp.2d at p. 1382.)

16

rejected by three Federal Courts of Appeals and accepted by none," and that plaintiff had not identified any sound basis for the court to disagree with those decisions. The court found "[e]ven more troubling . . . Plaintiff's repeated insistence that the Defendants reported the debt in question to credit reporting bureaus." According to the court, "Plaintiff made this charge, ignored Defendants' sworn declaration to the contrary that was provided early in the case, and never obtained any evidence to support it. . . . And when Defendants subpoenaed credit agencies in order to lay this issue to rest, Plaintiff refused to consent, forcing Defendants to file a motion to obtain credit reporting records, which confirmed that no Defendant had reported the disputed item to any credit agency." The court went on, "Plaintiff's refusal strongly suggests an intent to obstruct, rather than resolve, this litigation. Both this claim and Plaintiff's tactics in litigating the claim were completely meritless." The court also found that plaintiff's attempts to "recast" this claim to argue that defendants "were obligated to attempt to remove items reported by another agency from Plaintiff's credit report" was legally unsupported. The court concluded, "the circumstances in which this case arose are not entirely above suspicion; the manner in which Plaintiff's counsel prosecuted the case is not admirable; and the Court cannot find even a minimally colorable claim or position taken by Plaintiff."

Although this is a close issue, and counsel's dubious litigation tactics notwithstanding, we conclude plaintiff had at least one colorable claim. It is clear from the record that defendants did not report the debt to credit bureaus, and that there is no legal basis to conclude a debt collector has a duty to ensure that *others* remove a debt from a credit report. It is also true that every federal appellate court that has considered whether a debt collector who ceases collection efforts has a duty to provide verification has answered that question in the negative, and we agree that those cases are correctly decided. (See, e.g., *Guerrero*, *supra*, 499 F3d at p. 940; *Jang*, *supra*, 122 F.3d at pp. 482–483; *Smith*, *supra*, 953 F.2d at p. 1031.) However, as plaintiff points out—and as the court in *Jang*, *supra*, 122 F.3d at p. 482 acknowledged—in addition to requiring a debt collector to cease collection of a disputed debt "until the debt collector obtains verification of the debt or a copy of the judgment" (§ 1692g, subd. (b)), the FDCPA also

17

requires the debt collector, in the notice of debt, to include a statement that if the consumer notifies the debt collector of the dispute in writing during the 30-day period, "the debt collector *will obtain verification of the debt* or a copy of a judgment against the consumer and a copy of such verification or judgment *will be mailed to the consumer* by the debt collector." (§ 1692g, subd. (a)(4).) Thus, there is at least an arguable tension between the requirements of subdivision (a) of this statute, which requires the debt collector to tell the consumer it will obtain and mail verification, and subdivision (b), which does not impose an independent duty actually to obtain or send verification if the debt collector ceases collection efforts. Although the federal appellate courts have unanimously interpreted the statute so that a debt collector need not obtain and mail verification if collection efforts cease, no California court has ruled on the matter, and we cannot agree that the claim "utterly lacks merit" or that pursuing it indicates bad faith. (See *Corbett*, *supra*, 119 Cal.App.4th at p. 928.)[7]

Likewise, it does not appear to us that there was no good faith basis for plaintiff's claim that Holguin's telephone calls were collection efforts. Although the record on summary judgment persuades us that no reasonable trier of fact could conclude the calls constituted collection efforts, we are not persuaded that pursuing such a claim would indicate lack of good faith—and indeed, in its attorney fee order, the trial court did not discuss that claim.

We shall therefore reverse the attorney fee order.

---

[7] Indeed, as we have noted, some federal District Court cases before *Guerrero, supra,* 499 F.3d 926, concluded a debt collector did have an independent duty to verify a debt upon request. (See fn. 3, *ante,* and cases cited therein.)

18

## III.    DISPOSITION

The attorney fee order is reversed.  In all other respects, the judgment is affirmed.


_____
Rivera, J.


We concur:


_____
Reardon, Acting P.J.


_____
Humes, J.